STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, Appellant,

v.

Forrest ROARK and Iolene Roark, Individ-
ually, and as parents of Elizabeth
Roark, an infant, Appellees.

Court of Appeals of Kentucky.

Nov. 22, 1974.

Rehearing Denied Feb. 7, 1975.

P. H. Vincent, Ashland, Oscar H. Ger-
alds, Jr., Moloney & Moloney, Lexington,
for appellant.

J. W. McKenzie, Robert L. Woolery, II,
William H. Sewell, II, Ashland, for appel-
lees.

STEINFELD, Justice.

On March 30, 1969, Iolene Roark and
her eleven-year-old daughter Elizabeth sus-
tained personal injuries when they were in-
volved in an automobile accident with Clay
Daniel. At the time of the accident Daniel
carried automobile liability insurance with
United States Fidelity & Guaranty Compa-
ny (hereinafter USF&G). The Roark au-
tomobile was insured by appellant State
Farm Mutual Automobile Insurance Com-
pany (hereinafter State Farm). The
Roark policy afforded liability, collision,
medical payments of $500 per person, and
certain other coverages. Mrs. Roark in-
curred medical expenses in the amount of

$1,512.71 and Elizabeth's medical expenses were $1,026.46.

Mr. Roark promptly notified State Farm of the accident and resulting injuries to his wife and daughter. Subsequently, at State Farm's request, he furnished it a copy of the medical bills of Mrs. Roark and Elizabeth. In April 1969, Mr. Roark made inquiry of State Farm's agent concerning the medical payments' coverage of his policy. The agent confirmed State Farm's medical coverage but Roark said the agent informed him of the policy provision providing for subrogation of medical payments and said that any medical payments that State Farm might make would be above the amount of any payments Roark might receive from any other insurance company, including USF&G. The agent's statements dissuaded the Roarks from pressing their medical payments' claims against State Farm. Instead, the Roarks entered into negotiations for settlement of their claims directly with USF&G and were successful in settling their property damage claim. On August 12, 1969, the Roarks received from USF&G an offer of settlement of the personal injury claims in the sum of $13,500, which they rejected. On September 11, 1969, USF&G again offered to settle the Roarks' personal injury claims for $13,500; again they rejected the offer.

On September 22, 1969, the Roarks demanded payment from State Farm of their medical expense claims. State Farm's agent informed Mr. Roark that the adjuster for USF&G had asked State Farm not to make any payment to the Roarks because such payment would complicate the settlement USF&G was trying to negotiate with the Roarks. After consulting an attorney, Mr. Roark again demanded of State Farm that the medical expense claims be paid; whereupon, State Farm immediately paid $1,000 in full settlement of the medical expenses.

State Farm then notified USF&G of its payment to the Roarks and of its claimed right of subrogation under the terms of the policy it had issued to the Roarks. On March 12, 1970, after the Roarks settled their personal injury claims with USF&G for $13,500, USF&G issued two drafts totaling $12,500 payable to the Roarks and a third draft in the amount of $1,000 payable jointly to the Roarks and to State Farm. State Farm refused to endorse the latter draft, claiming that it was entitled to the proceeds thereof by reason of the medical payments' subrogation provision in its policy; whereupon, the Roarks sued State Farm for punitive damages and to compel it to endorse the draft. They alleged that the two insurance companies entered into a conspiracy to coerce them into a settlement of their claims with USF&G.

The pertinent provision of the policy is as follows:

"Upon payment under coverages C * * * of this policy the company shall be subrogated to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery which the injured person or anyone receiving such payment may have against any person or organization and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights."

The trial court held that the above-quoted subrogation provision of the policy was invalid and ordered that the proceeds of the $1,000 draft be paid to the Roarks. The claim for punitive damages was submitted to a jury which returned a verdict in favor of the Roarks for $1.00 compensatory damages and $5,500 punitive damages. On this appeal State Farm contends that the trial court erred (1) in holding the policy provision was invalid, and (2) in overruling its motion for a directed verdict and its motion for judgment notwithstanding the verdict on the punitive damage claim.

The question of the validity of the policy provision establishing the subroga-

tion right of an insurer after it makes medical payments apparently is one of first impression in Kentucky. This question is the subject of an annotation appearing in 19 A.L.R.3d 1054, where it appears that a majority of the limited number of jurisdictions that have considered the question have upheld a subrogation provision similar to that here involved. In certain jurisdictions which have allowed subrogation of medical payments, the law did not prohibit assignment of a claim for personal injuries. Davenport v. State Farm Mutual Automobile Insurance Co., 81 Nev. 361, 404 P.2d 10 (1965); Motto v. State Farm Mutual Automobile Insurance Co., 81 N.M. 35, 462 P.2d 620 (1969); Travelers Insurance Co. v. Lutz, 3 Ohio Misc. 144, 31 Ohio Ops.2d 469, 210 N.E.2d 755 (1964). In other jurisdictions in which subrogation of medical payments has been allowed despite a prohibition against assignment of a claim for personal injuries, the courts have adopted the view that a policy provision for subrogation of medical payments does not constitute an assignment of a claim for personal injuries but merely impresses a lien upon the proceeds of any recovery obtained by the insured from the tortfeasor. An example of the cases so holding is Bernardini v. Home & Automobile Insurance Co., 64 Ill.App.2d 465, 212 N.E.2d 499 (1965).

At least four jurisdictions have refused to allow subrogation of medical payments. Peller v. Liberty Mutual Fire Insurance Co., 220 Cal.App.2d 610, 34 Cal. Rptr. 41 (1963); Travelers Indemnity Co. v. Chumbley (Mo.App.) 394 S.W.2d 418, 19 A.L.R.3d 1043 (1965); Harleysville Mutual Insurance Co. v. Lea, 2 Ariz.App. 538, 410 P.2d 495 (1966); State Farm Fire & Casualty Co. v. Knapp, 107 Ariz. 184, 484 P.2d 180 (1971), and State Farm Fire & Casualty Insurance Co. v. Farmers Insurance Exchange, Okl., 489 P.2d 480 (1971). In Wittenauer v. Kaelin, 228 Ky. 679, 15 S.W.2d 461 (1929), we followed the common law principle that an *unliquidated*

*claim* for personal injuries cannot be assigned. We continue to adhere to that principle, believing that the reasons for the rule as stated in *Wittenauer* are sound. However, we have sustained the subrogation of claims in cases involving damage to motor vehicles. See Remedial System of Loaning v. New Hampshire Fire Insurance Co., 227 Ky. 652, 13 S.W.2d 1005 (1929), and Bratton v. Speaks, Ky., 286 S.W.2d 526 (1956). The General Assembly has provided for subrogation in the Workmen's Compensation law. KRS 342.700. Stiglitz Furnace Co. v. Stith's Adm'r, 234 Ky. 12, 27 S.W.2d 402 (1930); Cabe v. Popham, Ky., 444 S.W.2d 910 (1969). In Automobile Club Insurance Co. v. Commonwealth of Kentucky, Department of Highways, Ky., 414 S.W.2d 578 (1967), the insurance company settled a claim for wrongful death arising out of a highway accident. It sought recovery before the Board of Claims. KRS 44.070. We wrote, "After paying the damage claim asserted against the tort-feasors, the company became subrogated to the rights of the insured." The foregoing references illustrate the public policy of this state. An insurance company may validly include in a policy providing for medical payments, that after making such payments it is subrogated in that amount to the claim of its insured against a person causing the personal injuries which resulted in the medical expenses.

We hold that the trial court erred in submitting to the jury the issue of conspiracy and punitive damages. State Farm was privileged to protect its subrogation claim. We find no evidence which indicates that there was " * * * a corrupt or unlawful combination or agreement between two or more persons to do by concerted action an unlawful act, or to do a lawful act by unlawful means." McDonald v. Goodman, Ky., 239 S.W.2d 97 (1951). Furthermore, there was no showing that the acts of the two insurance companies resulted in damage to the Roarks. Cf.

Davenport's Adm'x v. Crummies Creek Coal Co., 299 Ky. 79, 184 S.W.2d 887 (1945).

The judgment is reversed.

All concur.