**Ralph LAWSON, Appellant,**

v.

**HELTON SANITATION, INC., Appellee.**

No. 1999–SC–0308–DG.

Supreme Court of Kentucky.

Oct. 26, 2000.

Rehearing Denied Jan. 25, 2001.

As amended Feb. 1, 2001.

Brien G. Freeman, Todd K. Childers, Freeman, Copeland & Jorjani, Corbin, for Appellant.

Robert F. Duncan, David B. Mattingly, Jackson & Kelly, Lexington, for Appellee.

COOPER, Justice.

■ The issue in this case is whether payments made under the medical payments ("Med–Pay") coverage of a liability insurance policy qualify as basic reparation benefits ("BRB") or added reparation benefits ("ARB") so as to toll the two-year statute of limitations for the insured's tort claim. The Knox Circuit Court held that they do; a divided panel of the Court of Appeals held that they do not. We granted discretionary review and now affirm the Court of Appeals.

## I. FACTS.

On February 3, 1993, Appellant, Ralph Lawson, was injured when his automobile collided with a vehicle owned by Appellee, Helton Sanitation, Inc., and operated by Helton's employee, Jamie Worley. Lawson was insured by Kentucky Farm Bureau Mutual Insurance Company ("Farm Bureau"); Helton was insured by The Travelers Insurance Company ("Travelers"). Farm Bureau paid Lawson a total of $10,000 under the personal injury protection ("PIP") coverage [1] and $500 under the medical payments ("Med–Pay") coverage of his policy. The last PIP payment was made on May 3, 1993. The last Med–Pay payment was made on July 9, 1993. On April 10, 1995, Lawson signed a verified complaint seeking tort damages against Helton. However, the complaint was not filed in the Knox Circuit Court until June 26, 1995, more than two years after the last PIP payment, but less than two years after the last Med–Pay pay-

---

1. Farm Bureau's standard form automobile policy refers to basic reparation benefits (BRB), which are defined in KRS 304.39–020(2) as personal injury protection (PIP) benefits. As noted in *Stevenson v. Anthem Cas. Ins. Group*, Ky., 15 S.W.3d 720, 723 (1999), those terms are used interchangeably in describing what are often referred to as "no-fault" benefits. There was uncontradicted evidence in this case that "PIP, BRB and no-fault benefits" are synonymous terms used interchangeably in the insurance industry to describe those benefits mandated by KRS 304.39–080(5) and KRS 304.39–110(1)(c).

ment. On October 20, 1995, Farm Bureau filed an intervening complaint against Travelers seeking recoupment of the $10,000 in PIP payments which it paid to Lawson. Pursuant to KRS 304.39–070(2) and (3), a reparation obligor (Farm Bureau), which has made BRB payments to its insured (Lawson), may intervene in the insured's tort action against the tortfeasor (Helton) in order to assert a direct claim against the tortfeasor's insurer (Travelers) for reimbursement of the reparation benefits paid to its insured (Lawson). *Grange Mut. Cas. Co. v. McDavid,* Ky., 664 S.W.2d 931, 932 (1984); *Stovall v. Ford,* Ky., 661 S.W.2d 467 (1983). Farm Bureau's intervening complaint against Travelers demanded only "the sum of $10,000.00 representing reimbursement of the basic reparations [sic] benefits heretofore paid to or for the benefit of the plaintiff, Ralph Lawson, by Kentucky Farm Bureau Mutual Insurance Company."

Following a trial by jury at which the jury was not informed of Farm Bureau's separate complaint against Travelers, a verdict was returned awarding damages as follows:

| | |
|---|---|
| $ 21,156.22 | Past medical expenses |
| 25,000.00 | Future medical expenses |
| 25,000,00 | Lost wages or income |
| 14,000.00 | Permanent impairment |
| 110,000.00 | Past and future pain and suffering |
| $195,156.22 | Total |

Final judgment was entered on May 5, 1997. The judgment awarded Lawson $185,156.22 against Helton and awarded Farm Bureau $10,000.00 against Travelers. The only remaining issue in this case is whether Lawson's complaint against Helton was barred by the two-year statute of limitations. KRS 304.39–230(6).

The Knox Circuit Court held that the period of limitations expired on July 9, 1995, two years after Farm Bureau made its last payment under the Med–Pay coverage of Lawson's policy. The Court of Appeals held that the period of limitations expired on May 3, 1995, two years after Farm Bureau made its last payment under the PIP coverage of Lawson's policy. Lawson advances three novel, but funda-

mentally flawed, theories in support of his claim that payments under the Med–Pay provisions of his Farm Bureau policy tolled the statute of limitations, *viz:* (1) Farm Bureau manipulated the statute of limitations by falsely classifying PIP payments as Med–Pay payments; (2) Med–Pay payments are "indistinguishable" from PIP payments, thus the last $500 in payments made by Farm Bureau to or on behalf of Lawson were, in fact, PIP payments; and (3) since Med–Pay coverage is payable regardless of fault, a Med–Pay payment is generically a "no-fault" payment which *ipso facto* tolls the period of limitations. As will be seen, none of these theories can withstand even rudimentary legal scrutiny. Our analysis begins with a perusal of the specific provisions of the contract in question.

## II. THE INSURANCE CONTRACT.

The declaration page of Lawson's Farm Bureau policy reflects that he purchased the following insurance coverages required by law:

(1) Personal injury and property damage liability coverage, as required by KRS 304.39–080(5) and KRS 304.39–110(1)(a), described in Part A of the policy, with limits of $25,000 per person, $50,000 per accident, and $25,000 property damage (premium: $56.20);

(2) Uninsured motorist ("UM") coverage, as required by KRS 304.20–020(1), described in Part C of the policy, with limits of $25,000 per person and $50,000 per accident (premium: $4.10); and

(3) Personal injury protection coverage, as required by KRS 304.39–080(5) and KRS 304.39–110(1)(c), described in Part B/1 of the policy, with the statutory maximum limit of $10,000 per person (premium: $20.10).

Lawson had also purchased optional (not statutorily required) Med–Pay coverage, described in Part B of the policy, with limits of $500 per person and $2,500 per accident (premium: $0.50). KRS 304.20–

040(1)(b) recognizes optional Med–Pay coverage as a separate and distinct coverage from BRB coverage:

"Automobile liability insurance policy" includes only coverage for bodily injury and property damage liability, basic reparations [sic] benefits, and the provisions therein, if any, relating to medical payments, uninsured motorists coverage, and automobile physical damage coverage.

In fact, Med–Pay coverage has been available as a separate optional coverage in automobile insurance policies since long before the 1974 enactment of the Motor Vehicle Reparations Act (MVRA). *See, e.g., State Farm Mut. Auto. Ins. Co. v. Roark,* Ky., 517 S.W.2d 737 (1974) (injured party's insurer has subrogation rights against the tortfeasor for payments made under Med–Pay coverage); *Meridian Mut. Ins. Co. v. Siddons,* Ky., 451 S.W.2d 831 (1970) (insured may recover under both the UM and Med–Pay coverages of his own policy, even though such constitutes double recovery).

Paragraph D of the Limit of Liability section of Part B (Med–Pay coverage) of Lawson's Farm Bureau policy provides as follows:

Part B —Medical Payments Coverage *shall be excess insurance over any Personal Injury Protection benefits* paid or payable but for the application of a deductible under Personal Injury Protection Coverage because of bodily injury sustained by an Insured. (Emphasis added.)

Since the Med–Pay coverage is excess insurance over the PIP coverage, the PIP coverage is primary and the Med–Pay coverage is secondary, *i.e.,* the PIP coverage must be paid in full before any part of the Med–Pay coverage is due and payable. *Cf. State Farm Mut. Auto Ins. Co. v. Hall,*

292 Ky. 22, 165 S.W.2d 838 (1942); *Home Indem. Co. v. St. Paul Fire & Marine Ins. Co.,* Ky.App., 585 S.W.2d 419 (1979).

Lawson's Farm Bureau policy also *offered* other optional coverages, *viz:* additional personal injury protection (ARB) coverage, KRS 304.39–140, described in Part B/2 of the policy; underinsured motorist (UIM) coverage, KRS 304.39–320, described in Part C/1 of the policy; and automobile physical damage (collision) coverage, KRS 304.20–040(1)(b) and (2)(c), described in Part D of the policy. As required by KRS 304.39–140(1), the ARB coverage was offered in increments of $10,000, $20,000, $30,000 or $40,000 per person:

[E]ach reparation obligor of the owner of a vehicle required to be registered in this Commonwealth shall, upon the request of a reparation insured, be required to provide added reparation benefits for economic loss *in units of ten thousand dollars ($10,000) per person subject to the lesser of:*

(a) Forty thousand dollars ($40,000) in added reparation benefits; or

(b) The limit of security provided for liability to any one (1) person *in excess of the requirements of KRS 304.39–110(1)(a).* (Emphasis added.)

Since Lawson had not purchased bodily injury liability coverage in excess of the minimum $25,000 per person coverage required by KRS 304.39–110(1)(a), Farm Bureau was not required under KRS 304.39–140(1)(b) to offer him the optional ARB coverage in any of the available increments. Regardless, the declaration page of Lawson's policy clearly shows that he did not purchase *any* ARB coverage, but instead opted to purchase $500/$2,500 worth of the Med–Pay coverage described in Part B of his policy.[2]

---

**2.** The record does not reflect whether Lawson opted for Med–Pay coverage instead of ARB coverage because of the negligible premium cost for Med–Pay (fifty cents) as opposed to ARB coverage, or because Farm Bureau did not offer him the optional ARB coverage, since he had purchased only the minimum bodily injury liability coverage, KRS 304.39–140(1)(b), or both (or for some other reason).

## III.  LIMITATIONS.

The period of limitations applicable to a tort claim arising out of a motor vehicle accident is set forth in KRS 304.39–230(6). However, an understanding of the entire statutory scheme requires an examination of both subsections (1) and (6) of the statute.

### 304.39–230.  Limitations of actions.

(1) If no basic or added reparation benefits have been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two (2) years after the injured person suffers the loss and either knows, or in the exercise of reasonable diligence should know, that the loss was caused by the accident, or not later than four (4) years after the accident, whichever is earlier. *If basic or added reparation benefits have been paid* for loss arising otherwise than from death, an action for further benefits, other than survivor's benefits, by either the same or another claimant, may be commenced *not later than two (2) years after the last payment of benefits.* (Emphasis added.)

. . .

(6) An action for tort liability not abolished by KRS 304.39–060 *may be commenced not later than two (2) years after the injury, or the death, or the last basic or added reparation payment made by any reparation obligor, whichever later occurs.* (Emphasis added.)

Thus, whether the action is brought against a reparation obligor for payment of reparation benefits, or against a tortfeasor for payment of a tort liability claim, the two-year period of limitations commences on either the date of the injury or the last payment of basic (BRB) or added (ARB) reparation benefits, "whichever later occurs." In *Milby v. Wright,* Ky., 952 S.W.2d 202 (1997), the insured filed his tort action on March 16, 1992. The last BRB payment had been made on March 5, 1990. On April 8, 1992, the insured submitted an additional medical bill to his reparation obligor for payment. Since both the filing of the tort action and the request for payment of the additional medical bill occurred more than two years after the last previous BRB payment, we held that the tort action was barred by the two-year statute of limitations.

In the case *sub judice,* Farm Bureau's "PIP Worksheet" shows that the following PIP (BRB) payments were made on the dates indicated:

| | | |
|---|---|---|
| Feb 25, 1993 | Knox County Ambulance | $    260.00 |
| Feb 25, 1993 | John R. Jones | 100.00 |
| Feb 25, 1993 | Dr. Daniel & Seo Radiology | 258.00 |
| Mar  1, 1993 | Corbin Medical Associates | 90.00 |
| Mar 30, 1993 | Baptist Regional Medical | 6,444.85 |
| May  3, 1993 | Ralph Lawson | 137.09 |
| May  3, 1993 | Self Care Medical Products | 89.00 |
| May  3, 1993 | M. Jorjani, M.D. | 2,621.06 |
| | Total: | $10,000.00 |

As noted *supra,* Lawson did not purchase any optional added reparation benefits (ARB) coverage. Farm Bureau's "Medical Coverage" worksheet shows that after exhausting its PIP coverage and purrsuant to the "excess insurance" provision of Part B (Med–Pay coverage) of the policy, it made the following Med–Pay payments on the dates indicated:

| | | |
|---|---|---|
| May  3, 1993 | Dr. M. Jorjani | $  3.94 |
| May 19, 1993 | Corbin Medical Associates | 20.00 |
| June  1, 1993 | Corbin Medical Associates | 20.00 |
| June  3, 1993 | Ralph Lawson | 214.00 |
| July  9, 1993 | Dr. M. Jorjani | 242.06 |
| | Total: | $500.00 |

On December 7, 1994, Lawson's attorney sent the following letter to Joe Lake, Farm Bureau's local claims representative:

Dear Mr. Lake:

As you are aware, Ralph Lawson was involved in a car accident on February 3, 1993, in which he received several injuries. He has informed me that Kentucky Farm Bureau has paid out its full PIP coverage for him. *Please forward me a copy of his PIP worksheet* relative to this accident.

If you have any questions concerning this matter, please do not hesitate to contact me.

Thank you for your cooperation.

Very truly yours,

/s/

(Emphasis added.) In response, Lake sent Lawson's attorney a copy of the "PIP Worksheet" listing the $10,000 in payments made under the PIP coverage and reflecting that the last PIP (BRB) payment was made on May 3, 1993. On March 13, 1995, Lawson's attorney sent Lake another letter, *viz:*

Dear Mr. Lake:

*Thank you for sending the PIP worksheet* as I requested. However, the other vehicle's insurance adjustor [*i.e.,* Travelers] has requested copies of the medical bills. If you have those on file, I would appreciate you sending me a copy. Please bill my office for the copying charges and I will have it promptly paid.

Thank you for your assistance on this.

Very truly yours,

/s/

(Emphasis added.) In response, Lake sent Lawson's attorney copies of all of the medical bills paid by Farm Bureau under both the PIP and Med–Pay coverages, as well as a copy of the "Medical Coverage" worksheet listing the $500 in payments made under the Med–Pay coverage and showing that the last Med–Pay payment was made on July 9, 1993. As previously noted, Lawson signed his complaint for tort damages against Helton on April 10, 1995, but did not file the complaint until June 26, 1995, more than two years after the last PIP (BRB) payment, though less than two years after the last Med–Pay payment.

We now turn to the theories advanced by Lawson in support of his claim that the last $500 in payments made to him or on his behalf by Farm Bureau tolled the two-year statute of limitations applicable to his tort claim against Helton.

## IV.  "MANIPULATION" OF THE STATUTE OF LIMITATIONS?

Lawson first accuses Farm Bureau of intentionally manipulating the statute of limitations so as to deprive him of his cause of action against Helton by characterizing reparation payments defined within the MVRA, *i.e.,* KRS 304.39–020(2) and/or KRS 304.39–140, as Med–Pay payments which, of course, are not governed by any provision of the MVRA. In support of this proposition, Lawson cites cases which hold that a policy of insurance cannot abrogate a mandatory provision of the MVRA, *e.g., State Farm Mut. Auto. Ins. Co. v. Mattox,* Ky., 862 S.W.2d 325 (1993) ("anti-stacking" provision with respect to ARB coverage cannot be enforced against the named insured); *Elkins v. Kentucky Farm Bureau Mut. Ins. Co.,* Ky.App., 844 S.W.2d 423 (1992) (insurance contract cannot establish a lesser period of limitations for bringing an action for BRB payments

than that established by KRS 304.39–230(6)). Of course, those cases have no relevance here, because Farm Bureau has attempted neither to "abrogate" a coverage mandated by the MVRA nor to enforce a contractual period of limitations of lesser duration than that established by KRS 304.39–230(6).

This argument (that Farm Bureau malevolently manipulated the statute of limitations to Lawson's detriment) overlooks the fact that Farm Bureau is Lawson's insurer, not Helton's. Farm Bureau is not Lawson's adversary in this action, but his co-plaintiff. Its claim against Travelers for reimbursement of PIP (BRB) payments is derivative of Lawson's tort claim against Helton. If Lawson's claim is barred by limitations, so, too, is Farm Bureau's claim against Travelers. *State Auto. Mut. Ins. Co. v. Empire Fire & Marine Ins. Co.*, Ky., 808 S.W.2d 805, 807 (1991) ("[t]he right of the reparation obligor to subrogation is dependent upon the right of the injured person to recover such damage"); *cf. Carlson v. McElroy*, Ky. App., 584 S.W.2d 754, 756 (1979) ("[s]ubrogation, either legal or conventional, is derivative in nature, and in this case, [the injured party's insurer's] claim against the reparations [sic] obligor of the [tortfeasor] reached no greater status than [the injured party's] claim against the [tortfeasor]"). Thus, it would be to Farm Bureau's *advantage* if the last $500 which it paid to or on behalf of Lawson had been BRB or ARB payments which would have tolled the statute of limitations. Farm Bureau not only had no motive to mischaracterize the last $500 of its payments as Med–Pay payments rather than BRB or ARB payments, but logically would have had exactly the opposite motive.

However, the inescapable fact is that the last $500 of its payments made to or on behalf of Lawson *must* have been Med–Pay payments, because the contract of insurance specifies that Med–Pay coverage

is "excess insurance" over PIP (BRB) coverage, *i.e.*, Med–Pay payments are payable only after the PIP payments have been exhausted. (One could only wonder while considering this argument how Farm Bureau's claims representative could have "manipulated" the statute of limitations in this case, since the PIP and Medical Coverage worksheets were prepared in 1993 and were furnished to Lawson's attorney in March 1995, whereas the period of limitations did not expire until May 3, 1995.)

## V. "INDISTINGUISHABLE" PAYMENTS?

Lawson's second theory is that the Med–Pay payments were, in fact, BRB or ARB payments (the argument does not specify which), because the last $500 in payments paid by Farm Bureau to or on behalf of Lawson were "indistinguishable" from the first $10,000 paid to or on his behalf, because "they were all reparation benefit payments."

This assertion ignores both the language of the statutes pertaining to reparation benefits (BRB or ARB) and the language of the contract entered into by Farm Bureau and Lawson. The last $500 paid by Farm Bureau to or on behalf of Lawson could not have been BRB payments, because BRB payments are limited by statute to a maximum of $10,000, KRS 304.39–020(2); and that maximum was paid out as of May 3, 1993. (Remember, the contract provides that Med–Pay coverage is "excess insurance" over PIP coverage, so it cannot be asserted that the *first* $500 was paid under the Med–Pay coverage and the *last* $10,000 was paid under the PIP coverage.) Nor could the last $500 have been ARB payments, since ARB coverage is statutorily required to be written "upon the request of" the insured "in units of $10,000 per person," KRS 304.39–140(1), *supra,* whereas the Med–Pay coverage was for only $500 per person.[3] Lawson's brief addresses this obstacle as follows:

---

3. The last $500 paid by Farm Bureau did not     constitute payment in full of all of Lawson's

They [ARB benefits] also did not have to be "requested" by Mr. Lawson because Farm Bureau voluntarily made them available under its policy.

It is unclear whether this statement posits (1) that the ARB statute only *requires* Farm Bureau to *offer* ARB in increments of $10,000 each, but does not *preclude* Farm Bureau from offering ARB coverage in increments of less than $10,000, if requested (though the statement appears to concede that Lawson did not request ARB coverage in lesser increments of, *e.g.,* $500), or (2) that Farm Bureau voluntarily provided ARB benefits *pro bono* even though not requested. The proposition that an insurance company would gratuitously provide coverage which was neither requested nor paid for is too absurd to merit consideration. Thus, we assume Lawson's claim is that, even though the statute requires ARB coverage to be offered in $10,000 increments, and even though the ARB provision of his Farm Bureau policy offered such coverage only in $10,000 increments, Farm Bureau was not precluded from contracting to sell ARB coverage in lesser increments of, *e.g.,* $500.

We note at the outset that there is no evidence to support a supposition that Lawson's local Farm Bureau agent had the authority to sell ARB coverage to Lawson in increments neither offered in the policy nor required by the statute. But even if such were true, the next issue would have to be whether Farm Bureau *did*, in fact, enter into such a contract with Lawson; and that issue can only be resolved by examining the contract, itself. Since the declaration page of the policy reflects that a premium was paid for Med–Pay coverage with limits of $500/$2500 and a premium was not paid for ARB coverage, Lawson is reduced to arguing that Med–Pay coverage is but a misnomer for ARB coverage even though the PIP (BRB), ARB, and Med–Pay coverages are all described in separate and distinct provisions of the policy which define separate and distinct coverages which clearly are *not* "indistinguishable."

The Med–Pay coverage pays only *medical and funeral* expenses incurred by an insured while *occupying or while a pedestrian* when struck by *any motor vehicle,* whereas persons other than an insured are covered only if injured while *occupying* (but not while a pedestrian when struck by) *the insured vehicle.* Under the PIP (BRB) and ARB coverages, "an eligible injured person" can recover not only medical and funeral expenses, but also work loss, replacement services loss, survivor's economic loss, and survivor's replacement services loss. Under the PIP coverage, an "eligible injured person" is "the named insured or any relative who sustains bodily injury while *occupying or while a pedestrian* through being struck by *any motor vehicle*" (emphasis added), or *any other person* "who sustains bodily injury *while occupying or while a pedestrian* through being struck by *the insured motor vehicle.*" (Emphasis added.) The ARB provision defines an "eligible injured person" only as the "named insured or relative" (not "any other person") and does not provide coverage for injuries sustained while a pedestrian or injuries sustained by passengers in the insured vehicle who are not relatives of the named insured.[4]

Furthermore, the Med–Pay coverage in Lawson's policy is limited to $500 per person and *$2,500 per accident.* The MVRA does not permit a "per accident" limitation on either BRB or ARB coverage. Those coverages are required to be provided in increments of $10,000 per person regardless of the aggregate amount payable per accident. Thus, the "Med–Pay coverage" described in Lawson's Farm Bureau policy

remaining medical bills (thus, could not have been a partial exhaustion of a $10,000 ARB increment). At trial, Lawson proved $21,156.22 in past medical expenses.

4. KRS 304.39–140(2) permits ARB coverage to be written with "such terms, conditions and exclusions as may be consistent with premiums charged."

could not be simply a misnomer for ARB coverage.

Before leaving this subject, it should be recalled that Farm Bureau did not claim in its intervening complaint that it was entitled to recoup its $500 in Med–Pay payments from Travelers.[5] KRS 304.39–070(3) and KRS 304.39–140(2) create a right of subrogation by direct action only with respect to BRB and ARB payments. Nor did the final judgment entered in this case award Farm Bureau a judgment against Travelers for the $500 paid under its Med–Pay coverage. Rather, *the judgment awarded that sum to Lawson against Helton,* presumably pursuant to the collateral source rule. *Burke Enters., Inc. v. Mitchell,* Ky., 700 S.W.2d 789 (1985); *Taylor v. Jennison,* Ky., 335 S.W.2d 902, 903 (1960). If the $500 Med–Pay payments had, in fact, been BRB or ARB payments, the right to recover those payments would have belonged not to Lawson, but by statutory assignment to Farm Bureau. *Ohio Cas. Ins. Co. v. Ruschell,* Ky., 834 S.W.2d 166, 168 (1992) ("by statutory mandate the tort claimant has no further tort claim whatsoever for those elements of damages paid or payable under the no-fault statute"); *id.* at 170 (no-fault benefits are not "collateral source payments").

## VI. "GENERIC" NO FAULT BENEFITS?

Finally, Lawson erroneously asserts that the landmark case of *Fann v. McGuffey,* Ky., 534 S.W.2d 770 (1975) holds that a payment under the Med–Pay coverage of an automobile insurance policy tolls the running of the period of limitations for filing a tort action. For this proposition, Lawson relies on the following passage:

An action for tort recovery not foreclosed by KRS 304.39–060 must be commenced within two years after the injury

or death or after the last payment of *no-fault benefits,* whichever is later.

*Id.* at 775 (citing KRS 304.39–230(6)) (emphasis added). Observing that payments under Med–Pay coverage are payable regardless of fault, Lawson concludes that a Med–Pay payment is generically a "no-fault" payment, *ergo,* a Med–Pay payment tolls the statute of limitations.

■ Of course, Justice Palmore was not referring to a payment under the Med–Pay coverage when he wrote the above passage in *Fann v. McGuffey.* The first paragraph of his opinion in that case clearly reveals that he was not referring to all benefits payable regardless of fault, but only to benefits payable under the MVRA, which is referred to in that opinion as the "no-fault law."

The plaintiffs in an action challenging the validity of a "no-fault" automobile insurance law enacted by the 1974 General Assembly appeal from a judgment of the Franklin Circuit Court . . . .

*Id.* at 772 (footnote omitted). As noted *supra* at note 1, the terms "BRB," "PIP benefits" and "no-fault benefits" are used interchangeably in referring to benefits payable under the MVRA. *E.g.:*

This is an action filed by Paula L. Ruschell, the insured, seeking a declaratory judgment and damages against her insurer, Ohio Casualty Insurance Company, for no-fault benefits. The benefits are described in her policy as "Personal Injury Protection (PIP)" coverage, and conform to the statutory coverage described in the Motor Vehicle Reparations Act (MVRA) as "Basic Reparations Benefits" (BRB).

*Ohio Cas. Ins. Co. v. Ruschell, supra,* at 166; *see also Stevenson v. Anthem Cas. Ins. Group, supra* note 1, at 723; *Troxell v. Trammell,* Ky., 730 S.W.2d 525, 527 (1987) ("[t]he Motor Vehicle Reparations Act is . . . much broader than just basic

---

**5.** Farm Bureau could have filed a subrogation claim against the tortfeasor, Helton, to recover the Med–Pay payments, *State Farm Mut. Auto. Ins. Co. v. Roark, supra,* but did not do

so, presumably because the two-year period of limitations had already expired on that claim before the intervening complaint was filed.

reparations [sic] (or no-fault) benefits"). But even if Justice Palmore's reference to "no-fault benefits" in *Fann v. McGuffey* created an ambiguity in that regard, such was resolved in *Crenshaw v. Weinberg*, Ky., 805 S.W.2d 129 (1991):

> The plain meaning of this subsection [KRS 304.39–230(6)] is, when the *"last ... payment" of BRB* losses occurs more than two years after the accident, this is the event which "later occurs," and this extends the time limitation for "an action for tort liability" accordingly.

*Id.* at 130 (emphasis added). There is no such thing as a generic no-fault payment which tolls the two-year period of limitations for filing a tort action. The only no-fault payment which tolls the period of limitations is a BRB or ARB payment as those terms are defined in the MVRA.

## VII. CONCLUSION.

To summarize, (1) pursuant to KRS 304.39–230(6), the two-year statute of limitations is tolled only by payments of BRB or ARB, as defined within the MVRA; (2) the last $500 in payments made to Lawson under his Farm Bureau policy were neither BRB nor ARB payments, but payments under the Med–Pay coverage of his policy, a coverage which predates the MVRA and which is identified elsewhere in the Kentucky Insurance Code; (3) Lawson's tort action against Helton was not filed within two years after the "last basic or added reparation payment"; thus, (4) his tort action against Helton was barred by limitations.

Accordingly, the opinion of the Court of Appeals is affirmed.

GRAVES, JOHNSTONE and KELLER, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion, with LAMBERT, C.J., and STUMBO, J., joining that dissent.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because the $500 medical benefit paid to Lawson by his insurer, Kentucky Farm Bureau Mutual Insurance Company, qualifies as an "added reparation payment" for the purposes of KRS 304.39–230(6).

As correctly noted by Court of Appeals Judge Emberton in his dissenting opinion, the intent of KRS 304.39–020 is that the payment of medical expenses is a reparation benefit. The statute states in pertinent part that:

> As used in this subtitle:
>
> (1) "Added reparation benefits" mean benefits provided by optional added reparation insurance.
>
> (2) "Basic reparation benefits" mean benefits providing reimbursement for net loss suffered through injury arising out of the operation, maintenance or use of a motor vehicle, subject, where applicable, to the limits, deductibles, exclusions, disqualifications and other conditions provided in this subtitle. The maximum amount of basic reparation benefits payable for all economic loss resulting from injury to any one (1) person as the result of one (1) accident shall be ten thousand dollars ($10,000), regardless of the number of persons entitled to such benefits or the number of providers of security obligated to pay such benefits. Basic reparation benefits consist of one (1) or more of the elements defined as "loss."

Regarding limitations, KRS 304.39–230 states in relevant part:

> (6) An action for tort liability not abolished by KRS 304.39–060 may be commenced not later than two (2) years after the injury, or the death, or the last basic or added reparation payment made by any reparation obligor, whichever later occurs.

The real question in this case is how we characterize the $500 no-fault medical ben-

efit. There is nothing in the statute to suggest that an added medical benefit from a no-fault policy must be expressly designated as a reparation benefit in order to meet the statutory requirement. Case law is also silent on this question.

*Fann v. McGuffey,* Ky., 534 S.W.2d 770 (1975), interpreting the statute makes no specific mention of a reparation benefit payment. It indicates that the payment must be a "no fault" benefit payment expressed as follows:

> An action for tort recovery not foreclosed by KRS 304.39–060, must be commenced within two years after the injury or death or after the last payment of no-fault benefits, whichever is later.

It is well settled that the MVRA is to be liberally interpreted in favor of the accident victim. *Troxell v. Trammell,* Ky., 730 S.W.2d 525 (1987). In addition, contracts of insurance are to be liberally construed in favor of the insured. *State Auto Mutual Ins. Co. v. Ellis,* Ky.App., 700 S.W.2d 801 (1985). This rule of liberal construction applies to the MVRA as well as to statutes of limitation. *See Plaza Bottle Shop, Inc. v. Al Torstrick Ins. Agency, Inc.,* Ky.App., 712 S.W.2d 349 (1986); *Troxell v. Trammell, supra,* at 528.

This Court has stated that the plain meaning of the statute is that a person has two years after the last payment of benefits in which to file an action for tort liability without regard to whether such benefits were first claimed or first paid within two years of the date of injury. *Milby v. Wright,* Ky., 952 S.W.2d 202 (1997); *Crenshaw v. Weinberg,* Ky., 805 S.W.2d 129 (1991). The Act is to be interpreted to promote the intent of the legislature to encourage motor vehicle accident victims to look first to their no fault benefits and then to pursue a tort claim if necessary. *See Bailey v. Reeves,* Ky., 662 S.W.2d 832 (1984); *Crenshaw, supra.*

Lawson brought this action within two years of the last payment of medical expenses related to the accident. The controversy here is whether these medical payments were not reparation payments because Farm Bureau labeled them as "medical expense payments" and not as reparation payments. The issue is whether an insurance company can control whether payments are classified as reparations under the MVRA by calling them something other than reparation payments in the insurance policy.

The position taken by the majority opinion erroneously combines definitional terms contained in KRS 304.39–020 with non-definitional terms found in KRS 304.39–140. The latter states that, if requested, the benefits must be provided in increments of $10,000. Clearly, this is a requirement for the insurer to follow and is not intended to harm the insured. We must also observe that this section is silent as to benefits provided voluntarily and in less than $10,000 increments, In other words, the statute does not state that if benefits are not requested, then any benefits provided shall be deemed non-reparation benefits. Thus, it was permissible for Farm Bureau to provide added reparation benefits that were not requested in whatever increments it chose.

We have previously held that an insurance policy's terms, conditions and exclusions cannot eliminate an item of coverage which the Act requires upon request. *See State Farm Mutual Automobile Insurance Co. v. Mattox,* Ky., 862 S.W.2d 325 (1993). An insurance company cannot abrogate the provisions of the MVRA by means of the language it uses in the policy. *Gordon v. Kentucky Farm Bureau Ins. Co.,* Ky., 914 S.W.2d 331 (1996), determined that the one-year limitations period in a Farm Bureau policy was invalid and held that the 15 year limitations period for contract actions applied. Although the court observed that the company could contract for less than a 15 year limitation, such period would have to be at least two years based on the MVRA as interpreted in *Elkins v. Ky. Farm Bureau Mutual Ins. Co.,* Ky. App., 844 S.W.2d 423 (1992). No automo-

bile insurance company in Kentucky is permitted to limit the coverage provided by the MVRA by the use of terms, conditions and exclusions in an insurance policy.

The medical benefit payments made by Farm Bureau were reparation benefits, or no-fault payments, under the Act. The first $10,000 and the last $500 in payments were indistinguishable because they were all reparation benefit payments. Lawson should not to be denied his right to recovery through construction of the Act which is a detriment to the accident victim and through a restrictive construction of an insurance policy against the insured. The opinion of the Court of Appeals should be reversed and the decision of the trial court should be affirmed so as to reinstate the jury verdict in favor of Lawson.

LAMBERT, C.J., and STUMBO, J., join in this dissent.