Susan COLE, Appellant

v.

Kevin FAGIN and Grange Mutual
Casualty Company, Appellees.

No. 2012–CA–000797–MR.

Court of Appeals of Kentucky.

April 19, 2013.

Discretionary Review Denied by Supreme
Court Feb. 12, 2014.

Kyle B. McKenzie, Hamilton, OH, for
appellant.

Whitney Dunlap III, Richmond, KY, for
appellee, Grange Mutual Casualty Company.

Perry M. Bentley, Carl N. Frazier, Lexington, KY, for appellee, Kevin Fagin.

Before MOORE, NICKELL, and
TAYLOR, Judges.

## OPINION

MOORE, Judge:

Susan Cole appeals from the Madison Circuit Court's summary judgment in favor of Appellees, Kevin Fagin and Grange Mutual Casualty Company, which it entered on the basis of the statute of limitations. Upon review, we reverse.

### FACTUAL AND PROCEDURAL HISTORY

Susan Cole carries a policy of insurance with Grange; among other things, her policy includes $5,000 in Med Pay, $10,000 in Basic Reparations Benefits (BRB), and

components of underinsured and uninsured motorist coverages. On July 1, 2009, Cole was injured in an automobile accident with Kevin Fagin. Cole incurred medical expenses after her resulting injuries were treated at St. Joseph Hospital–Berea. In response to Cole's accident and resulting injuries, Grange's adjuster mailed Cole an application for BRB on July 2, 2009.

Nothing in Cole's policy with Grange indicates any priority of payment between Cole's Med Pay and BRB coverages. As Grange represents in its brief, however, its adjuster later "analyzed the situation and realized that Grange could best serve [Cole] by marshaling the two coverages that [Cole] had available," *i.e.*, Med Pay and BRB. On July 9, 2009, Grange's adjuster then sent a letter to Cole's attorney stating in relevant part:

| Insured: | Susan L. Cole |
|---|---|
| Claim Number: | APV963781CJT |
| Date of Loss: | 7/01/2009 |
| Your Client: | Susan Cole |

Dear Attorney Snyder,

Thank you for your letter of representation for Mrs. Cole. Her Ohio auto policy carries $5000.00 in Medical Payments coverage. She will also received [sic] $10,000 basic PIP [1] coverage since her accident occurred in Kentucky. I have mailed the PIP forms to Ms. Cole to complete.

We will issue payment for her medical expenses under the Medical Payments coverage since there is a one year statute on that coverage. The PIP statute is

two years from the date of the accident or from the last payment date.

All reservations must be submitted in writing.

The record contains nothing from Cole or her attorney acknowledging Grange's July 9, 2009 letter, but Cole completed her application for BRBs on July 8, 2009, and mailed it back to Grange shortly thereafter. A July 26, 2009 letter regarding "Claim Number: APV963781CJT" from Grange to Cole's attorney indicated that Cole's claims for Med Pay and BRB were *both* open, but this letter did not reflect which coverage would be utilized. Two subsequent letters of October 5, 2009, and November 17, 2009, which Grange sent to Cole's attorney then referred to "Claim Number: APV963781CJT" as Cole's "PIP claim." Aside from this, nothing else in the record before us indicates what coverage the parties believed was being utilized while Grange was paying Cole's medical expenses from August 6, 2009 to October 22, 2009,[2] which totaled $3,976.57.

Cole eventually filed suit against Fagin and Grange on October 13, 2011, claiming that Fagin was liable to her for negligence and that Grange was contractually liable for providing her with underinsured coverage. Additionally, Cole claimed that Grange had only partially paid a claim that she had made with Grange for Med Pay *and* BRB benefits under her insurance policy.

Without filing answers, Grange and Fagin moved to dismiss Cole's claims pursuant to the applicable statutes of limitations

---

1. The parties use the term "Personal Injury Protection," or "PIP," interchangeably with "Basic Reparation Benefits," or "BRB." Unless we are directly quoting the evidence or briefs, we will simply refer to it as "BRB" for the sake of simplicity.

2. Grange has attempted to supplement the appellate record with a self-generated worksheet. The worksheet recites that when

Grange paid Cole's medical expenses from August 6, 2009 through October 22, 2009, those payments came from "IMP LOSS–MP," which Grange translates to mean "Cole's Med Pay coverage." Even if this worksheet was relevant, which it is not, we do not consider this worksheet on appeal because it was not contained in the record below. *Wilder v. Noonchester*, 113 S.W.3d 189, 191 (Ky.App. 2003).

described in Kentucky's no-fault insurance law, *i.e.,* the Motor Vehicle Reparations Act (MVRA), Kentucky Revised Statute (KRS) 304.39–010 *et seq.* KRS 304.39–230(1), which is the MVRA's statute of limitations relating to unpaid claims for BRBs, provides:

> If no basic or added reparation benefits have been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two (2) years after the injured person suffers the loss and either knows, or in the exercise of reasonable diligence should know, that the loss was caused by the accident, or not later than four (4) years after the accident, whichever is earlier. If basic or added reparation benefits have been paid for loss arising otherwise than from death, an action for further benefits, other than survivor's benefits, by either the same or another claimant, may be commenced not later than two (2) years after the last payment of benefits.

Similarly, KRS 304.39–230(6), the MVRA's statute of limitations relating to tort claims, provides:

> An action for tort liability not abolished by KRS 304.39–060 may be commenced not later than two (2) years after the injury, or the death, or the last basic or added reparation payment made by any reparation obligor, whichever later occurs.

In sum, both limitations periods either begin with the date of the claimant's injury or with the date the claimant receives her last payment of BRBs, whichever is later.

Both Grange and Fagin advanced the argument that Cole had received $3,976.57 in Med Pay benefits instead of BRBs; the last date for Cole to file any tort or BRB recovery action was therefore two years after July 1, 2009; and, consequently, that the suit that she filed on October 13, 2011 was untimely. In support, Grange contended that it had the option of paying Cole's medical expenses from either the $5,000 in Med Pay coverage provided in Cole's insurance policy or the $10,000 in BRB coverage that was imputed into her policy by Kentucky law because nothing in Cole's policy prohibited it from doing so. Also, it asserted that Cole "raised no objection" to its decision to characterize its reimbursements to Cole as Med Pay, and that Cole was therefore "estopped" from "re-characterizing" those payments as BRBs.

In rebuttal, Cole asserted that Grange's payments totaling $3,976.57 constituted disbursements under her BRB coverage, and thereby extended the statute of limitations for filing her claims against Fagin and Grange to two years after the last of those disbursements (October 22, 2009) and that her October 13, 2011 suit was timely as a result. In support, Cole argued that the MVRA required her BRB coverage to be exhausted before her Med Pay coverage could ever come into play; her medical expenses qualified for reimbursement under her BRB coverage; and that because the entirety of those medical benefit disbursements equaled less than her $10,000 BRB coverage limit, the entirety of those medical benefit disbursements were BRBs. Furthermore, Cole argued that Grange was equitably estopped from asserting that it had utilized Cole's Med Pay coverage because the only benefits Cole applied for were BRBs, and Grange's subsequent communications were either ambiguous with regard to how Grange was going to pay her medical expenses, or indicated that Grange had granted her request for BRB.

After considering these arguments, the circuit court granted Grange's and Fagin's respective motions and dismissed Cole's claims. This appeal followed, and the parties raise the same arguments here as they did below.

## ANALYSIS

The issues raised in this matter are issues of law, not fact; therefore, we review them *de novo*. *Carroll v. Meredith,* 59 S.W.3d 484, 489 (Ky.App.2001). No party contests that the MVRA applies in this matter, or purports to have rejected any part of it. The parties agree that Cole properly received $3,976.57 from Grange for her accrued medical expenses and that this was the only amount she received from Grange. Moreover, the only benefits that Cole applied for were BRB benefits, and Grange and Fagin do not contest that Cole's $3,976.57 in medical expenses could have qualified for reimbursement under Cole's BRB coverage.[3] In short, the only question in this matter is whether Cole received $3,976.57 from Grange for her medical expenses due to her Med Pay or BRB coverage; the answer to that question is dispositive of whether the statute of limitations expired on Cole's tort claims.

■■■ With that said, the MVRA supports Cole's argument that Kentucky law mandates the utilization of BRB coverage prior to Med Pay coverage. By statutory mandate, a tort claimant such as Cole (*i.e.,* one who has not rejected the MVRA) has no tort claim whatsoever for any element of damages to the extent that those damages have been paid, or *could have been paid,* through BRBs under her existing coverage. *Saxe v. State Farm Mut. Auto. Ins. Co.,* 955 S.W.2d 188, 191 (Ky.App. 1997); *see also* KRS 304.39–060; *Carta v. Dale,* 718 S.W.2d 126, 128 (Ky.1986). Here, it is undisputed that Cole's accrued medical expenses of $3,976.57 could have

been paid through her BRBs. Consequently, regardless of whether the parties actually agreed to label Cole's medical expense reimbursements from Grange as "Med Pay," and regardless of whether Cole filed her tort action within two years of July 1, 2009, the MVRA would require these medical expense reimbursements to be characterized as BRBs and would accordingly bar Cole from recovering that amount as an element of her damages. Because the MVRA requires Cole's accrued medical expense reimbursements of $3,976.57 to be considered BRBs at the *end* of any tort litigation (*i.e.,* for the purpose of determining her damages), to avoid absurdity it follows that the MVRA likewise requires Cole's accrued medical expense reimbursements of $3,976.57 to be considered BRBs at the *beginning* of any tort litigation (*i.e.,* for the purpose of the statute of limitations codified at KRS 304.39–230).

■ Furthermore, allowing an insurer to apply medical expenses toward Med Pay coverage, when those expenses could also have been applied toward BRBs, would be fundamentally at odds with the concept of "no-fault" in Kentucky. A provider of Med Pay benefits may typically file a subrogation claim directly against a tortfeasor to recover the amount of Med Pay benefits paid to its insured. *Lawson v. Helton Sanitation,* 34 S.W.3d 52, 60, note 5 (Ky.2000). However, as to any insurer or party other than a reparations obligor, the right of subrogation is derivative of the right of the injured person. *State Auto. Mut. Ins. Co. v. Empire Fire & Marine Ins. Co.,* 808 S.W.2d 805, 806 (Ky.1991). Inasmuch as Cole has no right to recover her $3,976.57 in accrued medical

---

**3.** As noted previously, Grange concedes in its brief that Cole "was also eligible for broader Basic Reparations Benefits (hereafter BRB) by virtue of the fact that she suffered an automobile accident related injury while a guest in our Commonwealth." Grange represents that the only reason Cole was given Med Pay coverage instead of BRB was that "Grange's adjuster then correctly analyzed the situation and realized that Grange could best serve its insured by marshaling the two coverages that she had available."

expenses from Fagin under the MVRA, her carrier, Grange, has no right of subrogation against Fagin for that amount. As such, Grange's attempt to characterize its payments to Cole as Med Pay rather than BRB was at best a self-defeating exercise. At worst, it was an impermissible attempt by Grange to give itself a legal remedy directly against Fagin that is prohibited by statute.

Grange points to two cases which it asserts stand for the proposition that the MVRA allows parties to exhaust Med Pay coverage before BRB coverage where an expense could qualify for either. The first of these cases is *Lawson*, 34 S.W.3d 52. *Lawson* held that "Med Pay" and BRBs constitute two distinct elements of coverage, and that only BRB payments are capable of tolling the statute of limitations stated in KRS 304.39–230. *Id.* at 61. *Lawson* further held that because the Med Pay coverage was designated in the insurance policy at issue in that matter as "excess coverage,"[4] the BRB coverage was to be paid in full before any part of the Med Pay coverage was due and payable. *Id.* at 55.

The second case cited by Grange is *Stull v. Steffen*, 374 S.W.3d 355 (Ky.App.2012), where a panel of this Court examined the same insurance policy provision that was at issue in *Lawson*. This Court concluded that $13.69 of a $223.00 payment that a provider paid its insured on January 24, 2006, under the pretense of Med Pay benefits actually qualified as BRBs because 1) the policy in question had a $10,000 BRB coverage limit; 2) the policy required BRBs to be paid first; 3) at least $13.69 of the medical expenses being reimbursed under the $223.00 Med Pay payment could have been satisfied from BRB coverage; and 4) the provider had only purported to pay its insured $9,986.31 in total BRBs before making its January 24, 2006 payment. *Id.* at 358.

However, we find no inconsistencies between *Lawson*, *Stull*, and the result we have reached. Ultimately, the Courts in *Lawson* and *Stull* both determined that BRB coverage preceded Med Pay coverage. The Court in *Lawson* was not presented with and did not address the question of whether the MVRA (as opposed to a contract) required BRB to be exhausted before Med Pay. And, to the extent that this question was raised in *Stull*,[5] *Stull* undermines Grange's argument because it emphasizes that Kentucky courts take a narrow view of an insurer's attempt to " 'game the system' by arbitrarily designating payments as [BRB] or MedPay," *Id.* at 358, and further states in broad terms: "[W]e agree that all PIP benefits must be paid before *an insurer* can disburse MedPay benefits." *Stull*, 374 S.W.3d at 357 (emphasis added).

## CONCLUSION

For these reasons, the order of the Madison Circuit Court is REVERSED.

ALL CONCUR.

---

4. As noted in *Lawson*, 34 S.W.3d at 55, the specific provision at issue appeared in a policy from Kentucky Farm Bureau Mutual Insurance Company. It stated:

Part B—Medical Payments Coverage shall be excess insurance over any Personal Injury Protection benefits paid or payable but for the application of a deductible under Personal Injury Protection Coverage because of bodily injury sustained by an Insured.

5. *See Stull*, 374 S.W.3d at 357 ("According to Stull, Farm Bureau was required by its policy *and the law* to pay $10,000 in PIP benefits before disbursing any MedPay benefits." (Emphasis added.))