Donald O'BRYAN, by his statutory guardian, George O'Bryan, Appellant,

v.

John C. PETERSON and Robert H. Peterson, d/b/a Seven Sons Farms and P & D Manufacturing Company, Appellees.

Court of Appeals of Kentucky.

Dec. 2, 1977.

Discretionary Review Denied April 25, 1978.

Jon William Goodman, Davis Williams, Munfordville, for appellant.

William S. Bowman, Stiles & Miller, Louisville, for appellee, P & D Mfg. Co.

Robert Spragens, Jr., Spragens, Smith & Higdon, Lebanon, for appellees, John D. Peterson and Robert H. Peterson.

Before GANT, VANCE and WILHOIT, JJ.

GANT, Judge.

The appellant, an infant 14 years of age, was injured on December 9, 1973, when he fell into the discs of an auger feeding system owned by Joseph E. Mouser and Paul Mouser and used by them in their farming operation. This system was manufactured by the appellee, P & D Manufacturing Company, and distributed by the appellee, John C. Peterson and Robert H. Peterson, d/b/a Seven Sons Farms.

On March 4, 1974, George O'Bryan was appointed statutory guardian for his son, Donald O'Bryan, by the judge of the Nelson County Court and executed a release in his capacity as guardian, which release is set out below.[1]

It should be noted that this release contained no reservation by the statutory guardian of any right to proceed against any other parties, including the appellees. The appellant was without benefit of counsel at the time this release was executed. A second release was executed by George O'Bryan and Mary O'Bryan, his wife, but that release is not before this Court on appeal, as the appeal was only from the action filed by George O'Bryan as guardian of his infant son. The second release by the parents did purport to release "all other persons, firms and corporations whomsoever of and from any and all claims and demands whatsoever which claimant now has or may hereafter have . . ."

On April 2, an action was filed by the guardian against the appellees herein in their capacity as manufacturers and distributors of the auger system and appellees set up the defense of the release as a bar to the claim of the appellant.

In an excellent opinion consisting of findings of fact, conclusions of law and judgment, the trial court reluctantly held that all claims of the appellant against the appellees were barred by reason of the execution of the release signed by the appellant guardian and entreated the appellate court to "reconsider its previous stands on this type release."

In examining the plea of the lower court to change the law in Kentucky and reverse this case, the Court is mindful of the fact that its position as an intermediate court renders it vulnerable when it chooses not to follow a recent case of the Supreme Court of Kentucky. However, this is not without precedent in the Commonwealth of Kentucky. The latest case which we can find touching on this subject matter is the case of *Stewart, Pros. Atty., et al. v. Sampson, Judge, et al.*, 285 Ky. 447, 148 S.W.2d 278 (1941). This was a case in which an appeal from the Corbin Police Court was taken to

---

1. KNOW ALL MEN BY THESE PRESENTS, That I, George O'Bryan, Guardian and next friend of Donald O'Bryan of New Haven, Kentucky, in the County of Nelson and State of Kentucky, being of full age, for the sole consideration of Eighteen thousand five hundred and 00/100 Dollars, to me paid by Joseph E. Mouser and Paul Mouser, the receipt whereof is hereby acknowledged, do hereby release, acquit and forever discharge the said Donald O'Bryan (sic) from all claims and demands, actions and causes of action for, upon or by reason of any damages, costs, loss of service, expenses and compensation which heretofore have been or which hereafter may be sustained by Donald O'Bryan on account of, or in any way growing out of injuries including known and unknown injuries and the consequences thereof which may hereafter develop as well as those which have already developed or are now apparent resulting from an accident that happened to said Donald O'Bryan on or about the Ninth day of December, 1973, at or near New Haven, Kentucky, by reason of accident of 12/9/73 and do hereby for myself, my heirs, executors and administrators, covenant with said Joseph E. Mouser and Paul Mouser to indemnify and save harmless the said Joseph E. Mouser and Paul Mouser from all claims and demands for damages, costs, loss of service, expenses or compensation on account of, or in any way growing out of said accident or its results, and including also any claim I have or may have for loss of service of said Donald O'Bryan, it being further agreed and understood that the payment of said Eighteen thousand five hundred and 00/100 Dollars is not to be construed as an admission on the part of said Joseph E. Mouser and Paul Mouser of any liability whatever in consequence of said accident.

WITNESS my hand and seal this 4th day of March in the year nineteen hundred seventy four.

the Whitley Circuit Court presided over by the respondent, Flem D. Sampson. The Police Court had imposed a fine of $100.00 under the Alcoholic Beverage Control Law of 1938, which statute provided for a penalty of not less than $100.00 nor more than $5,000.00, or by imprisonment not to exceed five years, which statute was clearly beyond the jurisdiction of the Corbin Police Court. Without going into the facts any further or into the disposition of the case, the question then became whether the circuit court, which acted as an intermediate appellate court in this case, had the power to disregard prior decisions of the Court of Appeals of Kentucky, the highest court in the state. The court, in dealing with that problem, stated as follows at page 453, 148 S.W.2d at page 281:

> But in the general practice a circuit court in this Commonwealth—and we believe also in other jurisdictions—has the inherent right and power to adjudge questions coming before it according to its sound judicial discretion independently of what may have been said to the contrary to other courts in the same sovereignty, although it may be the highest court therein, unless the right to do so has been expressly taken away by the only authority having the right to confer jurisdiction, i. e., the constitution of the state, or a duly enacted statute in pursuance thereto.
>
> .    .    .    .    .
>
> Numerous are the instances where circuit judges are confronted with questions previously determined by this court in cases prosecuted to it but which determinations do not meet the approval of the judge trying the particular case before him, since in the exercise of his judicial discretion he concludes that the determination made by this court is unsound and he declines to follow it.

This Court is of the opinion that the time has come for Kentucky to join the two-thirds of the American jurisdictions which have abrogated the rule set out in the case of *Kingins v. Hurt*, Ky., 344 S.W.2d 811 (1961) that the release of one joint tort-fea-

sor effectively releases all joint tort-feasors unless on the face of the release it can be fairly interpreted as reserving the claimant's right against other tort-feasors. As was said in the case of *Stewart, Pros. Atty. et al. v. Sampson, Judge, et al., supra,* we think that the determination made by the court in *Kingins, supra,* and in the case of *Sanderson v. Hughes,* Ky., 526 S.W.2d 308 (1975) is "unsound" and would like to "decline" to follow the rule. We would rather adopt the dissenting opinion of Chief Justice Reed in the case of *Sanderson v. Hughes, supra.* We feel that it is time to bury this rule, once and for all, to abolish any fictions which have grown up as methods of avoiding the rule, such as covenants not to sue, etc., and usurp the prerogative of declaring ourselves pallbearers at the funeral. However, this Court is mindful of the fact that we are without authority to overrule the Supreme Court of Kentucky or its predecessor court.

The *Kingins* rule has not always been the law in Kentucky. An excellent summary of this history is contained in the dissenting opinion of Judge Stewart in the case of *Commonwealth Dept. of Highways v. Cardwell,* Ky., 409 S.W.2d 304, 306 (1966). The first case recited therein was the case of *Louisville & Evansville Mail Co. v. Barnes' Admr.,* 117 Ky. 860, 79 S.W. 261 (1904). In that case the court said:

> .   .   . The law ought not to be that a release of one joint tort feasor, by his making a partial satisfaction for the wrong done, should operate as a release of the other wrongdoers. The law looks with favor upon compromises and settlements. It is not the intention of the law to force people into litigation and prevent settlements out of court. To uphold the rule contended for by appellant, such a result would follow.

This case established the rule that the release of one joint tort-feasor is not automatically the release of all, and further established the admissibility of parol evidence to show the intention of the parties and the amount of satisfaction of the claim. The rule announced in the *Barnes'* case

continued to be the law in Kentucky until the *Kingins* decisions in 1961.

The courts, for years, have indulged in artificialities and fictions. They have argued that since there is but one injury there can be but one action, and yet actions for contribution are commonplace. It is paradoxical that under the present rule in Kentucky only the injured party is barred from another action while the wrongdoer is free to pursue any course he chooses. See *Orr v. Coleman*, Ky., 455 S.W.2d 59 (1970); *Nix v. Jordan*, Ky., 532 S.W.2d 762 (1975); K.R.S. 454.040.

Some jurisdictions have called such actions "several torts" as distinguished from "joint torts" and it is certainly true that they enter the courtroom through separate doors while sitting at the same table. The *Kingins* rule has never had a true foundation in any conception of unitary obligation. The acts of joint tort-feasors, independently or in concert, serve to injure and are never entire in themselves. Each is responsible for the whole, which is not to say the injured party may have more than full satisfaction—he may not.

The courts have also talked of contract law, and with good reason. As is said in Corbin, *Contracts* § 596, Page 572 (1960):

> . . . there is a definite tendency to relax the operation of the parol evidence rule when a stranger to the writing is involved. This tendency is to be thoroughly approved when it prevents a writing from being held to be a substituted integration and discharge when the contracting parties have not so agreed. It is to be thoroughly disapproved if it is used to establish the validity of some oral agreement (or a written one) that has been effectively discharged by a subsequently fully integrated writing (or by a subsequent oral contract). It is to be thoroughly approved in those cases where it is used to prevent what appears on the face of an instrument to be a "release" of one joint obligor or joint tort-feasor from operating as a discharge of another such obligor or tort-feasor. In such a case, the offered testimony shows that the claimant did not intend the document to be a discharge of all his claims or to indicate that he had accepted anything in satisfaction of all of them. For that purpose it should be admissible in any suit against anybody.

The courts have also tried to hide their shame by inventing the "covenant not to sue" and seeking to differentiate between that and a release. This is probably the worst of all the fictions for how can we possibly say that the surrender of the right to sue does not release the person to whom it is given.

Legislatures in many states have passed laws relieving the harshness of the rule that the release of one joint tort-feasor releases all, but we in Kentucky cannot lay the blame for this rule on the General Assembly. This rule was not dropped on the doorstep of the courts; it was conceived and nurtured by us. And, to paraphrase the Scriptures, "The law giveth and the law taketh away."

Probably the finest opinion on the subject matter, an opinion which Professor Prosser states "seems to leave nothing more to be said," is that of Justice Rutledge in *McKenna v. Austin*, 77 U.S.App.D.C. 228, 134 F.2d 659 (1943). If space permitted, huge sections of this opinion should be copied herein. For example, in speaking of the rule currently in effect in Kentucky, the court stated:

> The rule's results are incongruous. More often than otherwise they are unjust and unintended. Wrongdoers who do not make or share in making reparation are discharged, while one willing to right the wrong and no more guilty bears the whole loss. Compromise is stifled, first by inviting all to wait for the others to settle and, second, because claimants cannot accept less than full indemnity from one when doing that discharges all. Many, not knowing this, accept less only to find later they have walked into a trap. The rule shortchanges the claimant or overcharges the person who settles, as the recurring volume and pattern of litigation show. Finally, it is anomalous in

legal theory, giving tort-feasors an advantage wholly inconsistent with the nature of their liability.

.    .    .    .    .

The majority are not unmindful of the force of stare decisis. But it is not a doctrine of mortmain. It does not exclude room for growth in the law nor does it require adherence to a highly technical rule which, at its inception, was at war with the elementary nature of the substantive liability to which it was applied; which has been maintained by lip service, while being chipped away in its substantive effect through multiplying through equally artificial distinctions

.    .    .

It is the opinion of this Court that the law in Kentucky should revert to the doctrine announced in the *Barnes'* case, *supra*. A step backward in time is often a step forward in justice. We would concur with the statement in Prosser, *Handbook of the Law of Torts*, Sec. 49, 304: "the only desirable rule would seem to be that a plaintiff should never be compelled to surrender his cause of action against any wrongdoer unless he has intentionally done so or unless he has received such full compensation that he is no longer entitled to maintain it."

Since this court is without authority to overrule *Kingins, supra*, and other decisions of the Supreme Court, we reluctantly affirm the lower court. However, we urge the Supreme Court to review the decisions in *Kingins, supra*, and *Sanderson, supra*, in light of the considerations suggested herein, especially in the aftermath of *Orr v. Coleman, supra*, and *Nix v. Jordan, supra*.

WILHOIT, J., concurs.

VANCE, J., concurs in the result only.