[Civ. No. 29639. Fourth Dist., Div. Two. May 2, 1984.]

PHILIP G. TROOST, Plaintiff and Respondent, v.
Estate of EDWARD R. DeBOER, Defendant and Appellant.

COUNSEL

Jones & Wilson and James T. Hudson for Defendant and Appellant.

Chase, Rotchford, Drukker & Bogust and E. Michael Kaiser for Plaintiff and Respondent.

OPINION

**KAUFMAN, J.**—Defendant Estate of Edward R. DeBoer (DeBoer) appeals from a judgment on a directed verdict in favor of plaintiff Philip G. Troost, individually and doing business as Troost Hay Sales (Troost).

*Facts*

Basically the facts are undisputed.

Defendant Edward R. DeBoer was a licensed insurance agent. In 1974, DeBoer solicited insurance business from Troost. Troost told DeBoer he wanted $1 million of coverage for his company. DeBoer placed insurance for Troost with Aetna Life & Casualty Company for which Troost was an authorized agent. Aetna issued a primary policy with defined limits of $250,000 for each individual and $500,000 per occurrence. Aetna also issued an excess coverage, or umbrella, policy for $1 million. Coverage under the umbrella policy did not come into play until the $250,000 primary coverage had been exhausted. Thus, in effect, there was a $250,000 deductible or retention before the umbrella policy was called into effect.

The Aetna primary policy expired in January 1975 after which DeBoer placed the primary coverage with Imperial Insurance Company (Imperial) for which he was also an authorized agent. The Imperial coverage had limits, however, of only $100,000 per individual and $300,000 per occurrence, creating an uninsured gap of $150,000 between the primary coverage and the excess coverage. Nevertheless, according to the testimony of Troost, the only witness who testified concerning the point, DeBoer repeatedly assured him the two policies together afforded him $1 million liability coverage.

In August 1975, an employee of Troost was involved in an automobile accident. As a result of the accident, Troost's employee and Troost were sued for damages for personal injuries. (Caudell v. Van Veen (Super. Ct. Riverside Co., No. 113731).) As a result of the filing of the personal injury lawsuit, Troost discovered the $150,000 gap between the primary coverage and the excess coverage. He did not have the financial ability to pay the $150,000 and was concerned about losing his business if he had to pay that amount. Troost therefore filed the instant action against Aetna, Imperial and DeBoer. After filing an answer, DeBoer died and his estate was substituted as defendant.

The underlying personal injury action was settled in 1978 for $300,000. Imperial paid $100,000, and Aetna agreed to pay $200,000, covering the $150,000 gap in policy coverage. As a part of the agreement for Aetna to pay the $200,000, Troost agreed to dismiss Aetna as a defendant in the instant action and to continue to pursue the action against DeBoer for the purpose of recouping the $150,000 paid by Aetna, agreeing to pay to Aetna any moneys recovered.

The case went to trial as against DeBoer's estate. At the close of all the evidence both parties made oral motions for directed verdict. The trial court granted the motion for directed verdict in favor of Troost and against DeBoer and judgment was entered accordingly. DeBoer's motion for judgment notwithstanding the verdict or for a new trial was denied.

*Discussion*

1. *Directed Verdict*

■ "A nonsuit or a directed verdict may be granted 'only when, disregarding conflicting evidence and giving to [the opposing party's] evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support

a verdict in favor of [the opposing party] if such a verdict were given.' . . ." (*Estate of Lances* (1932) 216 Cal. 397, 400 [14 P.2d 768].)

However, here the facts are not in dispute; it is only the legal conclusions to be drawn from the facts that the parties dispute. Accordingly, if the court was correct in its legal conclusions, the judgment on the directed verdict will be affirmed.

## 2. *Equitable Subrogation*

DeBoer contends the court erred in concluding Aetna was equitably subrogated to Troost's claim against him.

■ The elements of an insurer's cause of action based on equitable subrogation were enumerated in *Patent Scaffolding Co. v. William Simpson Constr. Co.* (1967) 256 Cal.App.2d 506 [64 Cal.Rptr. 187]: "(1) The insured has suffered a loss for which the party to be charged is liable, either because the latter is a wrongdoer whose act or omission caused the loss or because he is legally responsible to the insured for the loss caused by the wrongdoer; (2) the insurer, in whole or in part, has compensated the insured for the same loss for which the party to be charged is liable; (3) the insured has an existing, assignable cause of action against the party to be charged, which action the insured could have asserted for his own benefit had he not been compensated for his loss by the insurer; (4) the insurer has suffered damages caused by the act or omission upon which the liability of the party to be charged depends; (5) justice requires that the loss should be entirely shifted from the insurer to the party to be charged, whose equitable position is inferior to that of the insurer; and (6) the insurer's damages are in a stated sum, usually the amount it has paid to its insured, assuming the payment was not voluntary and was reasonable." (*Id.*, at p. 509.)

DeBoer urges that a number of the requisite elements were not met here. ■ First, DeBoer argues Troost suffered no loss because Aetna actually paid the $150,000 insurance gap and Troost did not have to pay it. DeBoer accurately states the facts, but the conclusion that equitable subrogation is precluded does not follow. The elements of an equitable subrogation, stated in *Patent Scaffolding,* expressly contemplate that "the insurer, in whole or in part, has compensated the insured for the . . . loss." Payment by the insurance company does not change the fact a loss has occurred.

DeBoer's argument was fully answered by this court in *Northwestern Mut. Ins. Co. v. Farmers' Ins. Group* (1978) 76 Cal.App.3d 1031 [143 Cal.Rptr. 415]. In that case, a permissive user of an automobile was involved in an automobile accident. The permissive user's automobile liability insurer pro-

vided coverage which was excess insurance. The owner's insurer provided coverage which constituted the primary insurance. The issue was whether the excess insurer could recover from the primary insurer the amount the excess insurer was required to pay on a judgment against the permissive user as a result of the primary insurer's bad faith refusal to settle. It was argued there that the permissive user's insurer could not be subrogated to a claim against the owner's insurer because the permissive user had no cause of action against the owner's insurer for bad faith refusal to settle, there having been no judgment against the permissive user in excess of all applicable (i.e., his own) insurance and, thus, the permissive user's estate was never threatened with or suffered any loss. We held: "It is not a prerequisite to equitable subrogation that the subrogor suffered actual loss; it is required only that he would have suffered loss had the subrogee not discharged the liability or paid the loss. Thus it is that *Continental Cas. Co.* v. *Zurich Ins. Co., supra,* 57 Cal.2d at pages 35-38 [17 Cal.Rptr. 12, 366 P.2d 455], *Aetna Cas. & Surety Co.* v. *Certain Underwriters, supra,* 56 Cal.App.3d at page 801 [129 Cal.Rptr. 47], *Valentine* v. *Aetna Ins. Co., supra,* 564 F.2d at pages 296-297, and *Peter* v. *Travelers Insurance Company, supra,* 375 F.Supp. at pages 1349-1350, all permitted recovery by one insurance carrier against another on a theory of equitable subrogation without any showing that the insured had suffered any loss." (*Id.,* at pp. 1044-1045.)

Thus, we conclude equitable subrogation is not precluded on the basis that Troost suffered no loss.

Citing *Mid-Century Ins. Co.* v. *Hutsel* (1970) 10 Cal.App.3d 1065 [89 Cal.Rptr. 421], DeBoer asserts an insurer only has rights of subrogation against a party who caused or contributed to the underlying automobile accident, and not against one who failed to obtain insurance. Not so.

In the cited case, Hutsel was the insurance agent of the automobile owner. In the past he had obtained automobile coverage for the owner of the subject vehicle. The policy expired. The broker, having already collected a premium therefor, negligently failed to procure a policy for the owner with another insurance company. Four days after the old liability policy lapsed, the car was involved in an accident. At the time of the accident, the car was being driven by a permissive user. The permissive user carried his own liability insurance with Mid-Century. The trial court had given a judgment for the owner, the permissive user, and the permissive user's insurer, against the broker for the full amount of the coverage which should have been, but negligently was not, obtained. The effect of the judgment was to require the broker to pay the first $10,000/$20,000 bodily injury and $5,000 property damage claims exactly as if he were an insurer. The judgment also

had the effect of making the permissive user's insurance coverage excess insurance.

On appeal the judgment was reversed. In the absence of other collectible insurance, the permissive user's insurance was by its own terms primary coverage. The liability of the broker for negligent failure to obtain other coverage was not "other collectible insurance" so as to render the permissive user's insurance excess coverage. The liability of the permissive user's insurer was primary and was not "caused" by the negligent failure of the broker to obtain other insurance for the owner, but rather, by the negligence of its insured, the permissive user, in causing the automobile accident.

That is not to say, however, as DeBoer contends, that equitable subrogation may not be had except against one who caused the underlying accident. As the court stated in *Mid-Century,* "If the claims arising from the accident result in reasonable settlements and judgments totaling less than Mid-Century's insurance coverage, neither [the owner] nor [the permissive user] has sustained damage by reason of [the broker's] breach. To that extent, the claims must be paid by Mid-Century, and [the owner's] and [the permissive user's] damage is *damnum absque injuria.* . . . [¶] Mid-Century's liability is defined by the limits of its insurance policy. *If the claims arising from the accident cannot be satisfied within its limits,* [the owner] and [the permissive user] *will be damaged because of* [*the broker's*] *breach.* To the extent such excess claims may be satisfied within the range of the $10,000/$20,000 bodily injury and $5,000 property damage insurance coverage [the broker] undertook, but failed to procure, [the broker] concedes his liability. The judgment should require him to pay any such claims or to indemnify [the owner] and [the permissive user] if they, or either of them, are required to pay them." (*Id.,* at pp. 1069-1070, italics added.)

It is not correct, then, to say that the negligence of the broker in failing to procure insurance may never cause damage. In *Mid-Century* it could not cause any damage to Mid-Century because it was obligated by its own contract to provide primary insurance. By contrast, neither Aetna nor Imperial here provided coverage in its policy for damages between $100,000 and $250,000. While in a sense the exposure to any liability was caused by the negligence of Troost's employee, the exposure of Troost to that liability without insurance coverage was caused by the negligence of the insurance agent. That is the loss Troost suffered by reason of the agent's misconduct, and that is the claim to which Aetna succeeds as an equitable subrogee.

■ DeBoer next contends that Troost's cause of action against the insurance agent is not assignable. DeBoer's reliance on *Goodley* v. *Wank & Wank, Inc.* (1976) 62 Cal.App.3d 389 [133 Cal.Rptr. 83], is misplaced.

The court there held a claim for damages for legal malpractice was not assignable because of "the unique quality of legal services, the personal nature of the attorney's duty to the client and the confidentiality of the attorney-client relationship." (*Id.*, at p. 397.) The court recognized that legal malpractice does not necessarily constitute "a 'tort of a purely personal nature' on a par with those wrongs done to the person of the injured party or his reputation or feelings which fall within the exception to the general rule of assignability." (*Ibid.*) Nevertheless, the special nature of legal services called for the creation of an additional exception to the general rule of assignability. Those unique factors are not present in the instant case. The procurement of insurance through a broker or agent is a commercial transaction with intended beneficiaries beyond the client alone. Troost's claim is assignable as provided in Civil Code sections 953 and 954. (See *Reichert* v. *General Ins. Co.* (1968) 68 Cal.2d 822, 834 [69 Cal.Rptr. 321, 442 P.2d 377].)

DeBoer also argues Aetna has not established the superior equity required for it to be entitled to maintain a claim in subrogation. None of the authorities cited by DeBoer are apposite. In each case the party claiming to be a subrogee had an independent contractual liability to pay or indemnify for the loss. "The rule in equitable phraseology is this: Where two parties are contractually bound by independent contracts to indemnify the same person for the same loss, the payment by one of them to his indemnitee does not create in him equities superior to the nonpaying indemnitor, justifying subrogation, if the latter did not cause or participate in causing the loss." (*Patent Scaffolding Co.* v. *William Simpson Constr. Co., supra*, 256 Cal.App.2d 506, 514.) In the instant case, however, Aetna was not contractually bound to indemnify Troost for amounts between $100,000 and $250,000. DeBoer likewise was not contractually bound to do so, but it was DeBoer's wrong which created the potential liability both as to DeBoer and as to Aetna. Manifestly, Aetna's equity is superior to that of DeBoer. Moreover, sound public policy considerations indicate the propriety of equitable subrogation in a situation such as this: the public policy of promoting reasonable settlements will be served and insurers will be encouraged to afford their insureds the protection they reasonably expected.

DeBoer also claims Aetna is not entitled to subrogation because it paid as a "volunteer." (See *Employers etc. Ins. Co.* v. *Pac. Indemn. Co.* (1959) 167 Cal.App.2d 369 [334 P.2d 658].) DeBoer is incorrect. Aetna was not a stranger or intermeddler who had no interest to protect. Aside from its interest in seeing that the reasonable expectations of its insured were fulfilled, Aetna was faced with a lawsuit claiming it was liable on the basis of an estoppel to deny coverage resulting from the representations of DeBoer, who was clearly its agent for some purposes.

The trial court properly ruled the doctrine of equitable subrogation was applicable.

### 3. *DeBoer's Liability to Troost*

DeBoer points out that even if Aetna is entitled to equitable subrogation, it can only stand in the shoes of Troost and can have no greater rights against DeBoer than Troost would have had. (*Continental Mfg. Corp. v. Underwriters at Lloyds London* (1960) 185 Cal.App.2d 545 [8 Cal.Rptr. 276].) DeBoer argues Troost had no recoverable claim against it because (1) there was insurance coverage based on DeBoer's representations as Aetna's agent that there was coverage; and (2) Troost's settlement with Aetna constituted a release of its agent DeBoer.

The evidence showed DeBoer was the agent of both Imperial and Aetna and that DeBoer represented to Troost that Troost had $1 million in automobile liability coverage. DeBoer argues that under those circumstances the insurers were bound by DeBoer's representation, and were liable to Troost.

Even aside from the question of DeBoer asserting his own misrepresentations as a defense to his liability, DeBoer is mistaken. True, the general rule is that ". . . in the absence of notice, actual or constructive, to the insured of any limitations upon such agent's authority, a general agent may bind the company by any acts, agreements or representations that are within the ordinary scope and limits of the insurance business entrusted to him, although they are in violation of private instructions or restrictions upon his authority." (*Cronin* v. *Coyle* (1935) 6 Cal.App.2d 205, 213 [44 P.2d 385].)

However, in the instant case, DeBoer made no representation as to the coverage provided by either the Aetna policy or the Imperial policy. Though at oral argument counsel for DeBoer urged otherwise, the record discloses that DeBoer represented only that both policies together would provide $1 million coverage and made no representation as to the coverage provided by either policy separately. There being no representation as to the coverage by either policy individually, neither insurance company can be estopped to deny coverage. DeBoer represented only that the two policies in concert provided the $1 million of coverage Troost had asked him to obtain. That representation was as a matter of law made in DeBoer's capacity, not as agent for either Imperial or Aetna, but as Troost's agent for the purpose of procuring the requested coverage. Troost testified he relied on DeBoer to purchase the necessary insurance coverage for his business and that DeBoer told him that he had $1 million in automobile liability insurance coverage. Although Troost knew he had two policies, he did not

know the amount of underlying coverage that was required before the excess coverage came into play. Even after he received the new Imperial policy, he simply put the policies in his files and relied on DeBoer's representation that the coverage was at least $1 million.

■ Although normally the existence of an agency relationship is a question of fact, the evidence here is not in conflict. "[I]f the essential facts are not in conflict the question of the legal relations arising therefrom is a question of law." (*Isenberg* v. *California Emp. Stab. Com.* (1947) 30 Cal.2d 34, 41 [180 P.2d 11].)

■ The dual agency relationship is also the answer to the contention the dismissal of Aetna from the instant lawsuit also acted to release DeBoer. DeBoer negligently failed, as agent for Troost, to procure the required insurance. DeBoer's liability to Troost is therefore entirely independent of his capacity as agent for Aetna, and the release of Aetna did not also release DeBoer. (See *Lippert* v. *Bailey* (1966) 241 Cal.App.2d 376, 383 [50 Cal.Rptr. 478].)

### Disposition

The legal conclusions reached by the trial court were sound; the directed verdict was properly granted.

The judgment is affirmed.

Morris, P. J., and Rickles, J., concurred.