ASSOCIATED INSURANCE SERVICE, INC. and Aon Risk Services, Inc. of Ohio, Appellants,

v.

Daniel GARCIA, M.D. and Rita Garcia, Appellees.

Nos. 2008–SC–000037–DG, 2008–SC–000044–DG.

Supreme Court of Kentucky.

Jan. 21, 2010.

As Modified Feb. 3, 2010.

As Modified March 19, 2010.

Rehearing Denied April 22, 2010.

Frank P. Doheny, Jr., Michael C. Merrick, Dinsmore & Shohl, LLP, Louisville, KY, for appellant, Associated Insurance Service, Inc.

Brent Robert Baughman, Mark Scott Riddle, P. Blaine Grant, Greenebaum, Doll & McDonald, PLLC, Louisville, KY, for appellant, AON Risk Services, Inc. of Ohio.

Larry B. Franklin, Franklin, Gray & White, Leroy E. Sitlinger, Jr., Sitlinger, McGlincy, Steiner, Theiler & Karem, Louisville, KY, for appellees.

Opinion of the Court by Justice CUNNINGHAM.

In this case, we are asked to consider two issues of first impression in Kentucky: whether professional negligence claims against an insurance agent and an insurance broker are assignable; and, if so, whether such assignment, when coupled with a settlement agreement as to damages and a covenant not to execute, is illusory or void as against public policy.

The Star of Louisville ("the Star") is a pleasure craft operating on the Ohio River by the City of Louisville. In 1997, it sought marine insurance coverage through Associated Insurance Service, Inc. ("Associated"), an insurance agency in Louisville. Given the specialized nature of the coverage, Associated contacted an insurance brokerage firm, AON Risk Services, Inc. of Ohio ("ARS"). Thereafter, ARS provided a quote to Associated from an insurance company in Australia, HIH Casualty and General Insurance, Inc. ("HIH"). The Star ultimately purchased a policy from HIH in October 1997. It renewed the HIH policy in 1998 and 1999.

On April 18, 1998, Rita and Daniel Garcia were enjoying a dinner cruise on the

Star. As they prepared to disembark, they were grievously injured when a wheelchair lift malfunctioned and crushed their legs. The Garcias filed suit against the Star for personal injury. As its insurer, HIH provided a defense in that action. The applicable policy had a $1,000,000.00 limit of liability for such sums that the Star "shall have become legally liable to pay and shall have paid" to the Garcias.

In 2001, and while the personal injury action against the Star was pending, HIH became insolvent. It is undisputed that HIH would be unable to satisfy any potential judgment against the Star. Reacting to this circumstance, the Garcias and the Star entered into an agreement to arbitrate on February 28, 2002.

Pursuant to the arbitration agreement, the Star admitted its liability and agreed to arbitrate the amount of damages within a stipulated range. The Garcias agreed to forebear any attempts to collect judgment from the Star. Furthermore, the agreement provided that the Star would assign to the Garcias "its claims against Associated Insurance Services, Inc. [and] AON Risk Services." Finally, the Garcias agreed to dismiss their personal injury suit against the Star without prejudice, "but subject to this agreement."

The Garcias and the Star did enter into arbitration. In June 2002, an arbitrator issued an award in the amount of $742,193.10 to the Garcias. Neither ARS nor Associated participated in the arbitration proceedings.

On November 27, 2002, the Star and the Garcias, in accordance with their prior arbitration agreement, executed an "assignment of rights and claims." The Star formally assigned to the Garcias "any and all claims and/or possible claims that assignor has of the date of this assignment or may hereafter have against ... Associated Insurance Service, Inc. [and] AON Risk Ser-

vices." The same day, the Garcias filed a complaint in Jefferson Circuit Court against Associated. Several weeks later, by amended complaint, the Garcias filed suit against ARS.

By the amended complaint, the Garcias asserted the Star's assigned claims against ARS and Associated. In five separate counts, the Garcias alleged fraudulent misrepresentation, negligence in the procurement of insurance, intentional infliction of emotional distress, breach of contract, and loss of consortium. Eventually, both ARS and Associated moved for summary judgment.

In its motion for summary judgment, ARS argued that the purported assignment of the Star's claims is void as a matter of public policy because it was the result of collusion between the Star and the Garcias. Further, ARS contended that the Star had no claims to validly assign because the Garcias agreed not to execute judgment against the Star before the arbitration award was handed down. In other words, because no legal liability was ever imposed on the Star, it had no claims to assign. Finally, ARS asserted that the arbitration award could not be asserted against it because it was not a party to the arbitration.

Associated, in its separate motion for summary judgment, also argued that the arbitration award could not be enforced against non-parties. Associated further averred that it owed no duty to the Garcias, so a claim for professional malpractice or negligence could not be made. Associated then asserted that the Garcias' claim of professional negligence sounds in tort and, therefore, is unassignable under Kentucky law. Finally, Associated maintained that the professional negligence claim fails as a matter of law because the Star violat-

ed its insurance contract by admitting liability.

The Jefferson Circuit Court granted the motion as to both ARS and Associated. Noting that tort actions are generally not assignable in Kentucky, the trial court reasoned that the Garcias' claim of professional negligence sounds in tort rather than contract. Relying on the opinion of the Arizona Court of Appeals in *Premium Cigars Int'l, Ltd. v. Farmer–Butler–Leavitt Ins. Agency*, 208 Ariz. 557, 96 P.3d 555 (Ariz.Ct.App.2004), the trial court concluded that the duty to exercise reasonable care in procuring proper insurance coverage for the Star arises from the agent-insured relationship, not from a contract. As such, the trial court concluded that the Garcias' claim was based in tort and, therefore, not assignable. The trial court further noted that public policy disfavors the assignment of claims for professional negligence.

In a later order denying the Garcias' motion to alter, amend or vacate, the trial court addressed the argument that ARS and Associated should not be bound by arbitration proceedings to which they were not parties:

> Even if the Court were convinced that vacating its prior Order was proper in light of the Garcias' instant motion, it would nevertheless find that the defendants are correct in arguing that summary judgment is proper on the grounds that, as non-parties to the arbitration agreement at issue, they are not bound by the arbitration's results. . . .

For this proposition, the trial court relied on *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir.2003) ("An arbitration panel may not determine the rights or obligations of non-parties to the arbitration."). The Garcias then appealed the summary judgment.

The Court of Appeals reversed and remanded. Rejecting the trial court's conclusion that a claim for professional negligence is not assignable, the Court of Appeals noted that tort claims which arise from a contractual relationship between the parties may be assigned. The Court of Appeals also rejected the conclusion that the assignment of claims for professional negligence violates public policy, believing instead that assignment of such a claim between an insured and an agent or broker does not involve any "role reversal" of the parties, as exists in the assignment of claims for legal malpractice. The Court of Appeals then addressed the allegation that the Garcias' agreement to forebear execution against the Star rendered the assignment illusory. Though holding that the agreement to forebear execution was not illusory, the Court of Appeals nonetheless doubted the reliability of the arbitration award and held that it was not binding on ARS or Associated.

ARS and Associated then sought discretionary review from this Court, which was granted.

### Standard of Review

The standard of review on an appeal of a summary judgment is whether the trial court properly determined that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. CR 56.03. The trial court must view the evidence in a light most favorable to the non-moving party and determine whether there exists any circumstances under which the non-moving party could prevail. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky.1991). If no such circumstances exist, summary judgment is proper. Because summary judgments involve no fact finding, this Court will review the circuit court's decision *de novo*. *3D*

*Enterprises Contracting Corp. v. Louisville and Jefferson County Metropolitan Sewer Dist.,* 174 S.W.3d 440, 445 (Ky. 2005).

### Assignability of Claims for Professional Malpractice against an Insurance Agent and Broker

We turn first to the assignment of a claim for professional malpractice against an insurance agent and broker. ARS and Associated attack the assignment on two grounds: (1) that it is an invalid assignment of a tort claim; and (2) that it violates public policy.

In arguing that tort claims may not be assigned, Appellants misstate the rule. As was the trend in the early twentieth century, the broad common law prohibition against assignment of claims receded: "As courts became more accessible and litigation a more accepted means for resolving disputes, the prohibition on assignment gradually became the exception rather than the rule." *Webb v. Gittlen,* 217 Ariz. 363, 174 P.3d 275, 276–77 (2008) (permitting assignment of negligence claim against insurance agent). The reasoning often rested on a comparison between assignment and survival of claims: "Many courts concluded that whether a claim would survive the claimant's death should also determine whether it could be assigned during the claimant's life and applied this test to both personal injury and other claims." *Id.* at 277.

■ Kentucky followed this trend, narrowing the class of unassignable claims through reference to the survival statute. "Any cause of action which would, upon the death of the party injured, pass to his personal representative, will pass under a deed of assignment." *Cleveland Coal Co. v. Sloan & Dick,* 11 Ky. L. Rptr. 306 (1889). We continue to adhere to that principle today: "The proper interpretation of [KRS 411.140] is decisive of the question as to whether or not this cause of action is assignable." *Grundy v. Manchester Ins. & Indem. Co.,* 425 S.W.2d 735, 736 (Ky.1968).

■ Through interpretation of KRS 411.140,[1] Kentucky's survival statute, and its predecessor, Section 10, Ky. Stat., rules concerning the assignment of claims have evolved and exceptions to the general rule of assignability have emerged. For example, torts arising from contractual relationships are assignable: "[The survival statute does not] have any reference to actions for torts which are founded upon contracts and grow out of the contractual relations between the parties." *Gross' Adm'r v. Ledford,* 190 Ky. 526, 228 S.W. 24, 25 (1921) (interpreting Section 10, Ky. Stat., which is identical to today's KRS 411.140).

Other exceptions have been created due to public policy concerns. Unliquidated tort claims for personal injury are not assignable:

> "While, generally speaking, choses in action are assignable, we have not been able to find a single case holding that, in the absence of a statute, an unliquidated claim for personal injuries may be assigned.... The reasons for the rule are that a claim for personal injuries is peculiarly a personal right that the injured party may or may not assert as he pleases, and that to permit one's pain

---

1. KRS 411.140 states: "No right of action for personal injury or for injury to real or personal property shall cease or die with the person injuring or injured, except actions for slander, libel, criminal conversation, and so much of the action for malicious prosecution as is intended to recover for the personal injury. For any other injury an action may be brought or revived by the personal representative, or against the personal representative, heir or devisee, in the same manner as causes of action founded on contract."

and suffering to become a matter of speculation is not looked upon with favor by the law."

*Wittenauer v. Kaelin,* 228 Ky. 679, 15 S.W.2d 461, 462 (1929). *See also State Farm Mut. Auto. Ins. v. Roark,* 517 S.W.2d 737, 739 (Ky.1974) (recognizing continuing adherence to the principle that unliquidated claims for personal injury may not be assigned, though tort claims for damages to personal property may be).

Likewise, an exception to the general rule that a claim may be assigned has been created for legal malpractice claims. In *Coffey v. Jefferson County Bd. of Educ.,* a defendant in a negligence action attempted to assign a claim of legal malpractice against his former attorney to the plaintiff, after entering into an agreed judgment for damages. The Court of Appeals held that a claim for damages arising from legal malpractice may not be assigned, citing "the uniquely personal nature of legal services and the contract out of which a highly personal and confidential attorney-client relationship arises[.]" 756 S.W.2d 155, 157 (Ky.App.1988) (*citing Goodley v. Wank & Wank, Inc.,* 62 Cal.App.3d 389, 133 Cal. Rptr. 83, 86 (1976)).

■ Applying these principles, we find no authority to conclude that a professional malpractice claim against an insurance agent or broker is unassignable. The Star's claim against ARS and Associated is essentially a negligence claim resulting in pecuniary loss. KRS 411.140 does not prohibit the assignment of a negligence claim resulting in injury to property or pecuniary loss, and no judicially-created exception exists. In fact, Kentucky courts have long recognized the assignability of negligence claims for damage to property. *See New York Underwriters Ins. Co. v. Louisville & N.R. Co.,* 285 Ky. 561, 148 S.W.2d 710 (1941) (recognizing as valid an assign-

ment of negligence claim resulting in property damage); *Roark,* 517 S.W.2d at 739.

■ Nonetheless, ARS and Associated insist that the professional negligence claim against them should not be assignable for public policy reasons. They liken a professional negligence claim against an insurance agent or broker to a claim for legal malpractice, which has been deemed unassignable for public policy reasons in *Coffey.*

Professional negligence claims against insurance agents are not sufficiently analogous to legal malpractice claims to justify extending a prohibition on assignment. While insurance brokers and agents owe a standard duty of reasonable care to their clients, attorneys are fiduciaries owing the utmost duty of undivided loyalty. Further, the attorney's duty flows solely to the client, while the insurance agent operates under a co-existing duty of fidelity to his principal, the insurance company. *See Forgione v. Dennis Pirtle Agency, Inc.,* 701 So.2d 557, 560 (Fla.1997) (*abrogated on other grounds by Cowan Liebowitz & Latman, P.C. v. Kaplan,* 902 So.2d 755, 757 (Fla.2005)).

In *Coffey,* we noted the "uniquely personal nature" of the attorney-client relationship. The agent/broker-insured relationship, by contrast, arises simply from a commercial transaction for the sale of insurance. *See Troost v. Estate of DeBoer,* 155 Cal.App.3d 289, 202 Cal.Rptr. 47, 52 (1984) (In deeming professional negligence claim against insurance agent assignable, it was noted that "[t]he procurement of insurance through a broker or agent is a commercial transaction with intended beneficiaries beyond the client alone."). An attorney cannot substitute himself without the client's permission, while insurance agents are often substituted and replaced without such limitations. Though the insured certainly discloses personal informa-

tion to his or her agent, it is simply not comparable to the personal relationship that exists between attorney and client.

Finally, the confidentiality that encompasses the attorney-client relationship is much different than the confidentiality owed by an insurance broker or agent to the client. Attorney-client confidentiality is certainly much broader and seeks to protect not only the client's personal interests, but also the public interest in accessible legal advice without fear of adverse ramifications. This interest is reflected in the severe penalties faced by an attorney who makes an unauthorized disclosure and the highly limited circumstances in which disclosures are permitted. *See Daugherty v. Blaase,* 191 Ill.App.3d 496, 138 Ill.Dec. 900, 548 N.E.2d 130, 132 (1989) (discussing difference between attorney-client relationship and broker-client relationship in upholding assignment of malpractice claim against insurance broker).

The majority of courts considering this issue have concluded that a cause of action against an insurance agent or broker for professional malpractice may be assigned. *See Stateline Steel Erectors, Inc. v. Shields,* 150 N.H. 332, 837 A.2d 285, 288 (2003) (collecting authority from Hawaii, Florida, Massachusetts, Iowa, South Dakota, Tennessee, and Washington, all of which involved claims against insurance agents). *See also Esposito v. CPM Ins. Services, Inc.,* 50 Conn.Supp. 283, 922 A.2d 343, 352 (Conn.Super.Ct.2006) ("[I]t is unsurprising that the majority of courts that have considered the issue have concluded that a cause of action against an allegedly negligent insurance agent is assignable."). In fact, the primary case relied upon by the trial court in this matter to support the conclusion that the claims were unassignable, *Premium Cigars Int'l, Ltd. v. Farmer–Butler–Leavitt Ins. Agency,* has since been overruled. In *Webb,* 217 Ariz. 363,

174 P.3d 275, the Arizona Supreme Court rejected the *Premium Cigars* rationale and concluded that public policy considerations do not prevent the assignment of a professional negligence claim against an insurance agent. We likewise hold that a claim for professional malpractice against an insurance agent or broker may be assigned.

### Validity of the Star's Assignment

■ ARS and Associated argue that, even if the Star's claims for professional malpractice were assignable, the purported assignment was invalid. They assert that the type of assignment that occurred in this case—an assignment of claims accompanied by a stipulated judgment and an agreement to forebear execution—is collusive and against public policy. They also argue that the purported assignment had no legal effect, as the Star suffered no damages because it was insulated from judgment by virtue of the agreement. Therefore, it had no valid claim to assign.

This case presents an issue of first impression in Kentucky. We look to other jurisdictions for guidance. "There is a split of authority as to whether an insured who has been released from the legal obligation to pay an excess judgment has any right against an allegedly negligent insurance agent, which could be assigned to others." *Stateline Steel,* 837 A.2d at 288. Courts considering this precise issue have analogized it to "circumstances of an assignment, coupled with an agreement, releasing a tortfeasor from liability, when an insurer has failed to settle a claim within policy limits and judgment enters against the insured in excess of those limits." *Campione v. Wilson,* 422 Mass. 185, 661 N.E.2d 658, 661–62 (1996). Different results have been reached, though a clear majority trend has emerged. A majority of courts have upheld the assignment and covenant not to execute as valid. Howev-

er, they differ as to their acceptance of an accompanying stipulated judgment or pre-judgment settlement that purports to fix liability.

We turn first to the legal effect of the Star's assignment of its claims to the Garcias, which was effectuated in exchange for a covenant to "forebear execution."

A minority of jurisdictions has concluded that insured tortfeasors, who are protected by a covenant not to execute and a stipulated judgment, have no obligation to pay anything to the injured party and, thus, the insurer would have no duty to pay under the policy. In these jurisdictions, the insurance agent cannot be held liable for any alleged negligence, as the insured has suffered no actual damage. These courts focus on language in the insurance policy regarding sums which the insurer has become legally obligated to pay.

> Had defendants' insurance agents procured the coverage alleged to be deficient, that coverage would not have become implicated, unless the insured became legally obligated to pay more than what was already paid on his behalf by his insurer. Under the covenant, however, he can never be required to pay any more than the coverage under the existing insurance.

*Oregon Mut. Ins. Co. v. Gibson*, 88 Or. App. 574, 746 P.2d 245, 247 (1987) (holding tortfeasor who was unconditionally insulated from liability had no assignable cause of action against allegedly negligent insurance agent for failure to procure adequate insurance coverage). *See also Freeman v. Schmidt Real Estate & Ins., Inc.*, 755 F.2d 135, 138 (8th Cir.1985) ("An insured protected by a covenant not to execute has no

compelling obligation to pay any sum to the injured party; thus, the insurance policy imposes no obligation on the insurer. An individual who is uninsured due to an agent's negligence then will have suffered no damages, as he would have had no rights under the policy anyway." (internal citations omitted)).[2] Relying on this reasoning, ARS and Associated argue that the assignment was illusory because the Garcias, having simultaneously extinguished the Star's liability to them, assumed no valid cause of action.

However, the majority of courts considering this issue have concluded that such assignments are valid. The focus of their analysis is on the nature of the agreement, drawing a distinction between a covenant not to execute and a release. "In these jurisdictions, an assignment is valid if it is coupled with a covenant not to execute because the insured remains liable for the excess judgment; an assignment coupled with a release is void because the release extinguishes the insured's liability." *Stateline Steel*, 837 A.2d at 288. *See also Kobbeman v. Oleson*, 574 N.W.2d 633, 637 (S.D.1998) ("Here, the covenant not to execute was 'merely an agreement … and not a release.' "); *Gray v. Grain Dealers Mut. Ins. Co.*, 871 F.2d 1128, 1133 (D.C.Cir.1989) ("Covenants not to execute are different than releases, as the legal liability remains in force against those who have covenants, whereas a release represents total freedom from liability."); *Lageman v. Frank H. Furman, Inc.*, 697 So.2d 981, 983 (Fla.Dist.Ct.App.1997) (In approving assignment of tortfeasor's negligence claim against insurance agent, it was noted that "the injured party [must] have com-

---

**2.** The Eighth Circuit, in *Freeman*, construed Iowa law. Later, the Iowa Supreme Court disagreed with the holding in *Freeman* and determined that such an assignment is valid under Iowa law and policy, even though the assignment of claims was accompanied by a covenant not to execute. This Iowa case, *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524 (Iowa 1995) is discussed further, *infra*.

pletely released the tortfeasor from liability from the underlying judgment or obtained a satisfaction of judgment in order to preclude a subsequent action."). Where liability is not completely extinguished, the assignment is valid because the tortfeasor is still subject to some amount of liability.

Having considered the varied approaches to this issue, we are persuaded that the assignment and agreement between the Garcias and the Star is valid. First, we note that the Garcias did not fully "release" the Star in any manner.[3] Rather, the agreement was to "forebear execution against defendant on any and all claims and awards." On this basis, we reject Appellants' assertion that the Star was relieved of any liability to the Garcias and suffered no damages and, therefore, had no valid claim to assign. On the contrary, the Star was not fully released, nor did the Garcias fully surrender their right to sue. The express terms of the agreement state that the Garcias "shall dismiss this lawsuit against the [Star] *without prejudice* but subject to this agreement." *See Stateline Steel,* 837 A.2d at 289 (Court rejected argument that tortfeasor had no valid claim to assign following execution of covenant not to sue: "That [tortfeasor] never had to pay the stipulated judgment out of its own pocket is immaterial. But for the defendants' alleged negligence, [tortfeasor] would not have had to enter into the settlement agreement.").

Moreover, we cannot ignore the practical value of these types of arrangements. They provide a remedy to the injured party as well as the tortfeasor who has been negligently denied adequate insurance coverage. *See Kobbeman,* 574 N.W.2d at 637. They promote the timely resolution of claims. "It is appropriate to give effect to agreements which have led to a carefully negotiated and detailed settlement, in which the plaintiffs have voluntarily assumed the burden of proving any claims that [the tortfeasor] might have against the defendants...." *Campione,* 661 N.E.2d at 663. It has also been noted that the alleged negligence of the agent or broker, if true, brings about the circumstances necessitating the settlement agreement and the tortfeasor's attempts to protect itself. Invalidation of the assignment would only inure to the benefit of the negligent parties, certainly an unjust result. *See Esposito,* 922 A.2d at 352.

Furthermore, we reject the claim by Appellants that a covenant not to execute, accompanied by an assignment of claims, is inherently collusive or otherwise against public policy, as the assignee will still be required to prove the agent's or broker's negligence at a trial of the assigned claim. "[W]e fail to see why legally it should make any difference who sues the insurer—the insured or the insured's assignee." *Red Giant Oil Co. v. Lawlor,* 528 N.W.2d 524, 533 (Iowa 1995) (permitting tortfeasor's assignment of claims against insurer for refusal to defend and insurance agent for negligent failure to procure adequate coverage). Thus, we conclude that a settlement which includes a covenant to forebear execution in exchange for an assignment of a claim against the tortfeasor's agent or broker is neither intrinsically collusive nor illusory for lack of damages.

---

**3.** Though we have discussed other jurisdictions' emphases on the differing effects of a covenant not to execute and a release, we acknowledge that Kentucky courts have drawn little distinction between the two. "[H]ow can we possibly say that the surrender of the right to sue does not release the person to whom it is given." *O'Bryan v. Peterson,* 563 S.W.2d 732, 735 (Ky.App.1977). Because the agreement between the Star and the Garcias was neither a covenant not to sue nor a release, we have instead focused on the legal effect of the agreement.

However, a final layer of analysis is necessary because, in this case, the assignment of the Star's claims and the agreement to forebear execution also included an agreement to arbitrate the extent of the Garcias' damages. ARS and Associated vehemently protest the validity of the arbitrator's award in this case, as they were not parties to the arbitration proceedings. In its order denying the Garcias' motion to alter or amend, the trial court agreed that ARS and Associated could not be bound by an arbitration award in which they did not participate.

The risk of collusion in these types of arrangements is certainly heightened when the tortfeasor not only assigns claims, but also stipulates the extent of damages. While the Garcias and the Star did not independently fix the award, the arbitration proceedings in this case cannot fairly be characterized as fully adversarial. Having already accepted the Garcias' agreement to forebear execution of any judgment or award, the Star was left with no tangible incentive to vigorously contest the extent of its liability.

While the aforementioned jurisdictions have approved of settlement agreements accompanied by a covenant not to execute, nearly all have expressed concern when such an arrangement also includes a stipulated judgment or prejudgment settlement purporting to fix the amount of the tortfeasor's liability.[4] "[W]e are mindful of the risk of collusion when an insured agrees both to a judgment in excess of its policy and to be protected from liability for that judgment[.]" *Stateline Steel*, 837 A.2d at 290. *See also Esposito*, 922 A.2d at 351 ("[O]nce [the tortfeasor] has assigned its claim against the agents and agreed to a judgment that will never be executed against it, [the tortfeasor] is unlikely to be concerned with such matters."); *Glenn v. Fleming*, 247 Kan. 296, 799 P.2d 79, 92 (1990) (expressing "concern over the reasonableness of assignment/covenants in which the amount of the judgment assigned has been determined by agreement of the parties," though ultimately permitting limited use of such assignments); *Freeman*, 755 F.2d at 139 ("Such collusion ... would be possible anytime the insured were protected by an agreement not to execute prior to entry of judgment; the insured ... loses the incentive to contest his liability or the extent of the injured party's damages either in negotiations or at trial."). The risk is particularly heightened when the agent or broker had no opportunity to contest the judgment or award.

Some jurisdictions refuse to bind parties who were not parties to the stipulated judgment: "[W]e do not perceive ... any basis for concluding that insurance agents would be bound by stipulated judgments to which they were not parties." *Webb*, 174 P.3d at 281. "[U]nlike an insurance

---

**4.** In *Coffey v. Jefferson County Bd. of Educ.,* the Court of Appeals expressed the same concern: "[T]he entire transaction involving the confession and acceptance of judgment, covenant not to execute and to indemnify, and assignment are not any indication of the actual damage, if any there was, as a result of legal malpractice." 756 S.W.2d 155, 156–57 (Ky.App.1988). While we do accept *Coffey* as a valid expression of concern over the possibility of collusion in these circumstances, we do not consider this statement to be determinative of Kentucky's position towards assign- ments coupled with covenants not to execute and stipulated judgments. The case was ultimately decided on the ground that claims for legal malpractice are not assignable and, therefore, the actual validity and/or reasonableness of the stipulated judgment were not squarely determined. Also, this Court of Appeals opinion is not binding as precedent on this Court, and we note that it has not been cited in any opinion—favorably or otherwise—of this Court. *See Phelps v. Louisville Water Co.,* 103 S.W.3d 46, 50 (Ky.2003).

company which has failed to defend its insured, these [defendant insurance brokers], who were not parties to the settlement agreement, cannot be bound by its terms insofar as it purports to fix their liability." *Campione,* 661 N.E.2d at 663. These jurisdictions do not consider the settlement agreement probative as to the issue of damages and require the plaintiffs to prove the extent of damages at a trial on the assigned claims, regardless of any terms in the settlement agreement. *Id.* *See also Stateline Steel,* 837 A.2d at 289 (noting that the settlement agreement is not "conclusive" on the issue of damages); *McLellan v. Atchison Ins. Agency, Inc.* 81 Hawai'i 62, 912 P.2d 559, 564–65 (Haw.Ct. App.1996) (allowing assignment of tortfeasor's claim against insurance agent for negligence, but holding that agent was not bound by amount set forth in stipulated judgment). Placement of the full burden of proof of the assigned claims, including the extent of damages, on the plaintiff "reduces the risk of collusion and justifies giving effect to the assignment of the negligence claims." *Campione,* 661 N.E.2d at 663.

Another approach, however, is to allow the negotiated settlement, but to also require some evidence of the reasonableness of the stipulated judgment before it can be entered against the defendants. Some jurisdictions accomplish this by allowing the defendant to challenge the judgment: "[T]he appropriate method by which to address the possibility that the settlement was obtained by fraud or collusion is to allow the agents to contest the stipulated judgment on the ground that it was improperly obtained." *Esposito,* 922 A.2d at 351 (internal citation omitted). Others place the burden of proof fully on the plaintiff to establish the propriety of the settlement: "The injured party ... has the burden to prove by a preponderance of the evidence that ... the settlement which

resulted in the judgment was reasonable and prudent." *Red Giant,* 528 N.W.2d at 535. *See also Chaussee v. Maryland Cas. Co.,* 60 Wash.App. 504, 803 P.2d 1339, 1342–43 (1991) (placing burden of proof on plaintiff to prove reasonableness of a stipulated judgment).

Kentucky has addressed the propriety of settlement agreements fixing damages only in the context of insurers who refuse to defend. In *O'Bannon v. Aetna Cas. & Sur. Co.,* 678 S.W.2d 390 (Ky.1984), this Court affirmed the insured's right to settle a claim after the insurer refused to defend, and an assignment of the insured's claims against the insurer in exchange for a release of liability on the judgment. However, we noted that if "the plaintiff and the insured are cooperating together to create an inflated collusive judgment ... the insurer would obviously have a remedy against any obligation to pay such a judgment[.]" *O'Bannon,* 678 S.W.2d at 393. *See also State Farm Mut. Auto. Ins. Co. v. Shelton,* 368 S.W.2d 734, 737 (Ky.1963) (recognizing that fraud and collusion are a valid defense which may be raised by an insurer when sued on a judgment obtained against its insured). The case at bar admittedly is not entirely analogous, as neither ARS nor Associated are insurers and, therefore, did not owe the Star a duty to defend. Nonetheless, we do believe *O'Bannon* and *Shelton* evidence a favorable regard for claim assignments coupled with a consent judgment or other settlement arrangement and a covenant not to execute, subject to some assessment that the settlement reflects a reasonable calculation of damages.

We are persuaded that a stipulated judgment or prejudgment settlement should not be summarily upheld or rejected when reached in conjunction with an assignment of claims and agreement to forebear execution. While the risk of col-

lusion exists, we do not perceive the risk to be so great as to-automatically invalidate an otherwise valid assignment of claims. We trust that our adversarial system is capable of assessing reasonableness and vetting instances of fraud and collusion.

Rather, the best approach is to allow the prejudgment settlement, but to require some assessment of the reasonableness of the award. The plaintiff has the burden of presenting prima facie evidence of the settlement's reasonableness insofar as it purports to establish liability. The defendant retains a fully panoply of defenses with which to rebut this presumption: fraud, collusion, unreasonableness, etc.

### Conclusion

Summary judgment was not proper in this case. The trial court erred in holding that the Star could not assign its claims against ARS and Associated to the Garcias. Such claims are assignable under Kentucky law. To this extent, we affirm the Court of Appeals. Further, the trial court and the Court of Appeals incorrectly determined that ARS and Associated could not be bound by the arbitrator's award in this case. Even when coupled with an assignment of claims and an agreement to forebear execution, a stipulated judgment or other prejudgment award may be imposed upon the defendants, subject to a showing of reasonableness.

Accordingly, this case must be remanded for further proceedings. Upon remand, the Garcias may proceed in their action against ARS and Associated. In addition to proving the elements of the Star's claims against ARS and Associated, the Garcias also bear the burden of providing prima facie evidence that the arbitration award was reasonable. ARS and Associated may challenge the validity and reasonableness of the award.

ARS and Associated raise a number of additional issues that are not properly addressed on appeal and should be pursued on remand. ARS argues that, as an insurance broker, it is not liable to the Star for HIH's insolvency. ARS also asserts that it cannot be placed in the same position as Associated, as an insurance broker is not held to the same standard of care as an insurance agent. The extent of ARS's duty to the Star and the reasonableness of its actions in procuring the Star's coverage with HIH are issues of fact to be considered on remand. In proving its assigned claims, the Garcias must establish that ARS owed a duty to the Star and that such duty was violated.

Both ARS and Associated argue that the Court of Appeals erred by invalidating the arbitration award, but upholding the validity of the assignment. Pursuant to the terms of the arbitration agreement, they point out the award cannot be severed without invalidating the entire agreement. As explained above, we have not invalidated the arbitration award; rather, we have remanded this case for further proceedings, which may include an assertion that the arbitration award was unreasonable. Should it be determined that the arbitration award is unreasonable, only then would it be appropriate to argue that the entire agreement has been voided.

For the foregoing reasons, the opinion of the Court of Appeals is affirmed in part and reversed in part. The summary judgment of the Jefferson Circuit Court is reversed, and this matter is remanded for further proceedings consistent with this opinion.

MINTON, C.J.; SCOTT and VENTERS, JJ., concur.

NOBLE, J., concurs by separate opinion.

SCHRODER, J., concurs in part and dissents in part and would affirm the Court of Appeals.

ABRAMSON, J., not sitting.

NOBLE, J., concurring.

I concur with Justice Cunningham's well written opinion, but write separately to hopefully add further clarity. I do agree that tort claims arising out of a breach of contract are assignable, and that the assignment in this action was a valid assignment.

However, my first question was whether there was anything to assign to the Appellees, the Garcias. The bankruptcy of HIH left Star on its own for the Appellee's liability claim for their injuries. However, Star avoided payment to Appellees, after admitting liability and arbitrating damages, by assigning its negligence claim against the brokers who sold Star the HIH policy. If the tortfeasor, Star, was not going to have to pay damages in exchange for its contract of assignment with the Appellees which included a covenant not to execute against Star "on any and all claims and awards," then was there anything of value to assign to the Appellees that could lead to the satisfaction of their damage claims against Star? It appeared that their very agreement had removed the one thing which would require any insurance company to pay on behalf of its insured if covered—an actual loss. If Appellees agreed never to execute against Star for the damage award obtained when the two parties arbitrated, then why would Star's insurance company have to pay if Star did not? Arguably, the underlying legal rationale requiring payment under Star's contract of insurance with its carrier—an actual loss by Star—did not, and would not occur. By relieving the tortfeasor of the obligation to pay through the agreement not to execute, its privies would also appear to be relieved. Thus if Star's insurance company was off the hook, what difference did it make if the Appellants

(AON/Associated) had negligently obtained that insurance for Star?

Indeed, as the majority opinion points out, some jurisdictions do follow that reasoning.

However, Star's claim against AON/Associated that the companies had negligently performed their professional duties to find a competent, appropriate insurance company to underwrite Star's liability coverage needs is premised on the fact that the company that was engaged, HIH, failed. Thus, the relevant fact is not that Star, and thereby its carrier, did not pay, but that HIH could not cover Star's loss. After admitting liability and arbitrating damages, Star did in fact have a loss that it was liable for (in the form of an arbitration award). In a manner of speaking, it paid that loss with the assignment to Appellees of its negligence claim against AON/Associated, which allows the Appellees to stand in the shoes of Star to prosecute that negligence claim. The damages in the negligence action would encompass the amount Star owes to the Appellees. Essentially, Star has allowed the Appellees to collect the money Star owes them through the negligence suit, and the Appellees have agreed to be paid by whatever they get from the assigned cause of action. This in no way means that Star does not *owe* these damages, but just that the Appellees hope they can collect them from the parties Star claims actually caused the loss.

Star is no less liable after the assignment than it would have been if its insurance company was solvent. Star is liable whether the Appellees collect from it or not. Absent the assignment, if the Appellees chose, they could sit on the judgment up until limitations ran and execute at any time if Star became adequately solvent. Thus, Star has not been released, but has traded its cause of action against Appellants in lieu of paying the judgment itself,

in exchange for Appellees' promise not to execute on the judgment Star would otherwise have to pay. The relevant fact is that Star is liable and must secure the payment of judgment damages in some way. And even though the Appellees have agreed to pursue Star's negligence claim against AON/Associated in lieu of collecting directly from Star, the judgment against Star remains actionable. The Appellees could still seek to execute the judgment against Star, even after the agreement; but because of the agreement, Star would have an equal and opposite breach of contract claim that would cancel out any execution of the judgment. A judgment against a party is not released until it has been satisfied, which will not happen in this case until after the Appellees pursue the claim against the Appellants.

Appellees may well not be able to obtain a judgment against AON/Associated, or may receive a judgment less than the arbitrated damages. Generally, this would leave Star liable for any excess amount. But here, the language of the agreement is broad, and appears to foreclose the Appellees from going back against Star if the claim against AON/Associated fails or falls short. Nonetheless, Star remains legally liable for the judgment amount because it was dismissed without prejudice, as a term of the assignment contract. Not until that suit is final will the case against Star be dismissed with prejudice.

This does result in Star never having to pay on the judgment, but Star will not be *released* from the judgment until the negligence suit is concluded, and the Appellees then dismiss their suit against Star *with* prejudice.

It is the legal liability of a party that triggers that party's right to coverage under a contract of insurance it might have, not the amount of damages or whether they are ever paid. If the negligent acts of middlemen brokers caused a failure of the liable party's coverage, then the liable party has a cause of action against the brokers, and can treat that cause of action as valid assignable property.

Otherwise, Star, if able, would have to pay the judgment, then sue the brokers to recover its loss caused by their negligent acts. But when a party is not able to satisfy the judgment, this approach doesn't work. While creative, the assignment in this case was neither fraudulent nor collusive. Star had every right to evaluate and admit liability, and in fact for at least part of the suit, was represented by counsel hired by HIH. The damages were arbitrated according to the terms of Star's insurance contract, and were fully presented to a neutral arbitrator. Appellees, as the injured parties, cannot be faulted for choosing a route that appeared to them most likely to result in payment of their damages. Under these unusual facts, the approach taken seems the most direct route to final resolution of the case.