RENDERED: OCTOBER 31, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1238-MR

CITY OF SHIVELY; OFFICER
CHRISTOPHER NELSON, IN BOTH
HIS INDIVIDUAL AND OFFICIAL
CAPACITIES; OFFICER JORDAN
BROWN, IN BOTH HIS INDIVIDUAL
AND OFFICIAL CAPACITIES; AND
OFFICER TOMMY BREITMEYER, IN
BOTH HIS INDIVIDUAL AND
OFFICIAL CAPACITIES                                          APPELLANTS


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE BRIAN C. EDWARDS, JUDGE
                    ACTION NO. 20-CI-006882


TYESHA SENTER, AS
ADMINISTRATRIX OF THE ESTATE
OF ANNJANETTE NICOLE SENTER;
ELIZABETH CHANDLER,
INDIVIDUALLY AND AS
ADMINISTRATRIX OF THE ESTATE
OF ENGRACIA STONER-
CHANDLER; GUY BRISON;
KENDRICK RAY; MARQUIS
STONER; AND TYESHA SENTER,
AS ADMINISTRATRIX OF THE
ESTATE OF STEPHAUN DOTSON                                    APPELLEES

<u>OPINION AND ORDER</u>
<u>VACATING AND REMANDING</u>

** ** ** ** **

BEFORE:  COMBS, L. JONES, AND TAYLOR, JUDGES.

JONES, L., JUDGE:  Three officers from the Shively Police Department,

Christopher Nelson (Nelson), Jordan Brown (Brown), and Tommy Breitmeyer

(Breitmeyer) appeal from a decision of the Jefferson Circuit Court denying their

assertions that they each enjoy qualified official immunity for claims raised against

them arising from the tragic ending to a high-speed vehicular pursuit.  The City of

Shively (Shively) also appeals, arguing it is statutorily immune from claims against

it which arise from the same fatal collision.  Because the trial court did not utilize

the proper analytical framework for its immunity analysis, we vacate and remand.

## **FACTS AND PROCEDURAL POSTURE**

Late one evening, a 911 caller reported that a female had been pushed

in, or out of, a white truck in a restaurant parking lot.  Nelson and Breitmeyer (the

responding officers) were dispatched to the scene.  Each officer drove separately.

The responding officers did not have their sirens or police lights engaged when

they arrived at the restaurant.

As the responding officers approached a truck matching the

description provided by dispatch, the truck drove away.  The responding officers

had not seen the female and the only visible occupant of the truck was its driver,

Guy Brison (Brison). Concerned the female mentioned in the 911 call may have unwillingly been in the truck, the responding officers decided to pursue Brison. Breitmeyer took the lead in his unmarked vehicle.

The pursuit occurred, sometimes at speeds over 100 miles per hour (approximately triple the posted speed limit), in a busy area of Jefferson County. Brison entered an intersection without stopping for a red light and his vehicle struck another vehicle, occupied by Kendrick Ray (Ray), Annjanette Senter, Stephaun Dotson, and Engracia Stoner-Chandler, an infant. Only Ray survived. The pursuit had lasted about thirty seconds.

Ray and Tyesha Senter, as Administratrix of the Estates of Annjanette Nicole Senter and Stephaun Dotson (collectively referred to as the Senter Plaintiffs or Senter Appellees) filed an action against Breitmeyer, Nelson, and Brison. Marquis Stoner and Elizabeth Chandler, individually and as Administratrix of the Estate of Engracia Stoner-Chandler (collectively referred to as the Chandler Plaintiffs or Chandler Appellees) also filed suit against Shively, Breitmeyer, Nelson, and Brown, who was the on-duty supervisor of Breitmeyer and Nelson at the time of the tragic events. The trial court consolidated the two actions.

Discovery ensued, and a trial date was scheduled to occur in April 2024, with discovery to conclude thirty days before trial. By late 2023, all parties

had been deposed, except for Brison, who had pending criminal charges stemming from his role in the fatal crash.

Prior to the expiration of the discovery deadline, all three officers and Shively itself (collectively the Defendants or the Appellants) filed a joint motion for summary judgment. Defendants' arguments included: (1) the official capacity claims against the three officers were impermissibly redundant of the claims against Shively; (2) Shively was statutorily immune from the claims against it pursuant to Kentucky Revised Statute (KRS) 65.2003; (3) punitive damages against Shively are statutorily barred by KRS Chapter 65; and (4) all three officers are entitled to qualified official immunity. Plaintiffs denied that the officers were immune and also argued summary judgment was premature because discovery had not concluded.

The trial court denied Defendants' motion for summary judgment. The trial court concluded summary judgment would be "inappropriate" because "Plaintiffs have presented facts wherein a jury could conclude that the Defendants were negligent and not entitled to qualified immunity for actions related to their pursuit of Brison." Opinion and Order Denying Defendant's Motion for Summary Judgment at 7. The trial court also held that "[a]s to the other issues raised by the parties in this action, the Court agrees with the Plaintiffs that . . . Defendants'

Motion is premature considering pending discovery." *Id*. Appellants then filed this appeal.

**APPELLANTS' DEFICIENT BRIEFS**

Before we begin our merits analysis, we must address Appellants' deficient briefs. Indeed, the Senter Appellees urge us to strike Appellants' noncompliant briefs and dismiss this appeal. "We regret having to address, yet again, an attorney's failure to comply with rules of appellate procedure." *French v. French*, 581 S.W.3d 45, 47 (Ky. App. 2019).

We agree with the Senter Appellees that Appellants' briefs are deficient – indeed, our review of Appellants' briefs revealed additional deficiencies not mentioned by the Senter Appellees. Nonetheless, Appellants regrettably chose to contest and minimize their opening brief's deficiencies in their reply brief instead of using the reply as a final opportunity to correct the blatant deficiencies. *See, e.g.*, *American Coal Terminal, Inc. v. Etera, LLC*, 699 S.W.3d 204, 212 (Ky. App. 2024) (declining to strike a brief which lacked preservation statements because the reply brief cured the deficiencies).

The requirements for appellate briefs are plainly stated in the Kentucky Rules of Appellate Procedure (RAP). In truncated form, Appellants have failed to comply with the following requirements found in RAP as:

- The certificates of service for both the opening and reply briefs do not indicate that either was served upon the trial court judge. *See* RAP 30(B);

- The word count certificate for Appellants' opening brief asserts it contains 8,750 words – the exact maximum number of words for an Appellant's opening brief permitted by RAP 31(G)(2)(a) – but our independent analysis revealed the brief contains more than 8,750 words;

- The word count certificate for Appellants' reply brief vaguely states it "contains less than 3,500 words" but a party is required to state the specific number of words in the brief. *See* RAP 15(C);

- The introduction and statement concerning oral argument sections of Appellants' opening briefs is longer than one page. *See* RAP 32(A)(1);

- Appellants repeatedly cite broadly to hundreds of pages in the sprawling trial court record. For example, the very first sentence in the "statement of facts" section of Appellants' opening brief (which RAP 32(A)(3) provides should instead be called the "statement of the case" section) ends with a citation to "R. 573-930, 937-939, 1318-1325." That broad cite covers a swath of nearly 400 pages of the record. RAP 32(A)(3) and RAP 32(A)(4) require "ample references to the *specific location* in the record" to support statements of facts, procedural events, and legal arguments. (Emphasis added.) A blanket citation to hundreds of pages of the record is unhelpful and noncompliant.

*See, e.g.*, *Curty v. Norton Healthcare, Inc.*, 561 S.W.3d 374, 377 (Ky. App. 2018) (deeming a citation to eighty-four pages of the record, a mere fraction of the range provided by Appellants, to be "lackluster" and having "no meaningful value" under the functionally identical briefing requirements in the former version of Kentucky Rule of Civil Procedure (CR) 76.12, superseded by RAP on January 1, 2023);

- There are no preservation statements for the issues Appellants wish us to address. *See* RAP 32(A)(4). A failure to provide preservation statements could lead to, among other sanctions, the issues being deemed unpreserved. *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021);

- The index to Appellants' opening brief does not state where the items in the appendix may be located in the nearly 1,400 page record. *See* RAP 32(E)(1)(d);

- Appellants frequently cite to the appendix of their brief instead of to the specific location in the record where we may locate the appended items. Citing to "the brief's own appendix . . . is not a substitute for the rule's requirement to cite only to the certified record on appeal." *J.P.T. v. Cabinet for Health and Fam. Serv.*, 689 S.W.3d 149, 151 (Ky. App. 2024).

RAP 10(B) provides in relevant part that:

the failure of a party to substantially comply with the rules is ground for such action as the appellate court deems appropriate, which may include:

> (1) A deficiency notice or order directing a party to take specific action,
>
> (2) A show cause order,
>
> (3) Striking of filings, briefs, record or portions thereof,
>
> (4) Imposition of fines on counsel for failing to comply with these rules of not more than $1,000,
>
> (5) A dismissal of the appeal or denial of the motion for discretionary review, and
>
> (6) Such further remedies as are specified in any applicable rule.

*See also* RAP 31(H)(1) ("A brief may be stricken for failure to substantially comply with the requirements of these rules.").

Given their numerous, serious deficiencies, it is beyond reasonable dispute that Appellants' briefs are not substantially compliant with RAP. One of Appellants' attorneys recently submitted a similarly deficient brief in *Jefferson Cnty. Sheriff's Office v. Jennings*, No. 2024-CA-0778-MR, 2025 WL 2263782, at *3 (Ky. App. Aug. 8, 2025) (unpublished). Simply put, "[w]e expect a greater degree of competency from appellate advocates than has been shown in this case." *Hamburger v. Plemmons*, 654 S.W.3d 99, 102 (Ky. App. 2022).

We were strongly inclined at first blush to strike Appellants' briefs and dismiss this appeal. After reflection, we have elected not to do so because failing to address the merits of the trial court's immunity decision would not serve the overall aims of justice as that decision does not contain the immunity analysis required by our Supreme Court. We thus shall address qualified official immunity on the merits.

However, our tolerance has reached its limit, particularly in light of the false word count certification. Therefore, a fine of $1,000 is hereby imposed. We strongly caution counsel to expect the imposition of further sanctions if counsel again submits a noncompliant brief. We implore counsel to scrutinize the basic appellate handbook available on our website.[1]

Though we are reviewing the qualified official immunity argument on the merits, we decline to sift through the voluminous record to attempt to find therein the items contained in the appendix to Appellants' opening brief. *See Commonwealth v. Roth*, 567 S.W.3d 591, 595 (Ky. 2019). Instead, we expressly note that the only item in the appendix to Appellants' opening brief which we shall consider is the summary judgment order at issue.

---

[1] *See* https://www.kycourts.gov/Courts/Court-of-Appeals/Documents/P56BasicAppellatePracticeHandbook.pdf

# QUALIFIED OFFICIAL IMMUNITY IS THE ONLY ISSUE

# PROPERLY BEFORE US

We decline the Chandler Appellees' invitation to dismiss this appeal as having been taken from an interlocutory decision. The trial court addressed qualified official immunity on the merits. A decision denying a claim to such immunity is immediately appealable. "[A] ruling on an immunity defense is an appealable issue by interlocutory appeal." *Baker v. Fields*, 543 S.W.3d 575, 577 (Ky. 2018).

However, "an appellate court reviewing an interlocutory appeal of a trial court's determination of a defendant's immunity from suit is limited to the specific issue of whether immunity was properly denied, nothing more." *Id.* at 578. Here, the trial court expressly declined to consider "the other issues raised by the parties in this action" because discovery was ongoing. That decision is not reviewable in this interlocutory appeal as there is no "final judgment . . . rendered [by] the trial court." *Erie Ins. Exch. v. Johnson*, 647 S.W.3d 198, 202 (Ky. 2022). *See also, e.g.*, *Ensor v. Ensor*, 431 S.W.3d 462, 473 (Ky. App. 2013) (noting the fundamental appellate principle that if "the matter was not actually decided by the trial court, we have no authority to review it.").[2] As our Supreme Court has held,

---

[2] That principle applies to Shively's seemingly novel claim that it is statutorily immune as the trial court declined to resolve that issue.

"[o]utside of the context of immunity, appellate courts only have jurisdiction to review *grants* of summary judgment; a denial of summary judgment is in most cases unreviewable until a final judgment is rendered at the trial court." *Erie Ins. Exch.*, 647 S.W.3d at 202.[3] Consequently, we will examine only the trial court's denial of Appellants' qualified official immunity claims and not the trial court's denial of summary judgment. However, Appellees' claims, and Appellants' other defenses, may be re-addressed by the trial court on remand, and we express no opinion on the viability of any claim for relief or other defense thereto.

## QUALIFIED OFFICIAL IMMUNITY

"The doctrines of sovereign and governmental immunity have vexed this Court and the subsidiary courts of the Commonwealth for decades." *Morales v. City of Georgetown*, 709 S.W.3d 146, 153 (Ky. 2024). Specifically, "the difficulty for all judges with qualified immunity has not been articulation of the rule, but rather the application of it." *Flatford v. City of Monroe*, 17 F.3d 162, 166 (6th Cir. 1994). Because assertions of immunity are presented to the trial court as motions for summary judgment, all too often trial courts bypass application of the law of immunity, including the necessary fact-finding required, and jump straight

---

[3] The limited exceptions to that rule are not present here. *See id.* ("There is an exception to this rule where (1) the facts are not in dispute, (2) the only basis of the ruling is a matter of law, (3) there is a denial of the motion, and (4) there is an entry of a final judgment with an appeal therefrom.") (internal quotation marks and citations omitted).

-11-

to the traditional summary judgment analysis. It is hoped that recent decisions of our Supreme Court will provide much needed guidance to trial courts facing this conundrum in the future.

Rooted in both common law and the constitutional doctrine of separation of powers, historically the rule on immunity has been that "a state agency is entitled to immunity from tort liability to the extent that it is performing a governmental, as opposed to a proprietary, function." *Sheehy v. Volentine*, 706 S.W.3d 229, 236 (Ky. 2024) (quoting *Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky. 2001)). And "when sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." *Yanero*, 65 S.W.3d at 522.

"[W]hether an official is entitled to qualified immunity turns upon 'the actor's status as a government official; [and] the ministerial/discretionary distinction[.]" *Sheehy*, 706 S.W.3d at 236-37 (quoting *Meinhart v. Louisville Metro Gov't*, 627 S.W.3d 824, 830 (Ky. 2021)). "Ministerial actions are those that require 'only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts.'" *Morales*, 709 S.W.3d at 155 (quoting *Yanero*, 65 S.W.3d at 522). "A discretionary action is one 'involving the exercise

of discretion and judgment, or personal deliberation, decision, and judgment.'" *Morales*, 709 S.W.3d at 154 (quoting *Yanero*, 65 S.W.3d at 522). If the challenged act was discretionary, the trial court must then determine whether it was taken in good faith and within the scope of the officer's authority. *Sheehy*, 706 S.W.3d at 237.

Typically, trial courts may not make findings of fact when addressing motions for summary judgment. *See, e.g.*, *Associated Ins. Service, Inc. v. Garcia*, 307 S.W.3d 58, 61 (Ky. 2010). And the trial court here followed that general prohibition. However, decisions from our Supreme Court have recognized an exception to that previously ironclad rule when a court must resolve motions for summary judgment based on immunity. Indeed, a trial court facing such a motion is now *required* to make limited findings of fact. *See, e.g.*, *Sheehy*, 706 S.W.3d at 244 ("As we acknowledged in *Meinhart*, in determining whether qualified immunity exists the trial court 'must make certain factual findings[.]' *Meinhart*, 627 S.W.3d at 829."). Here, the trial court did not make the findings required by *Meinhart*. Thus, we must vacate and remand the matter to the trial court to conduct the analysis required by *Meinhart* and subsequent cases.

On remand, in order to determine whether an act at issue taken by the government official was ministerial or discretionary, the trial court must "review the relevant statute, regulation, rule, or policy[.]" *Sheehy*, 706 S.W.3d at 237.

"Internal government rules, policies, and regulations necessarily constrain the individual discretion of public employees, and in some instances limit their discretion so greatly as to render their employment functions absolute, certain, and imperative[.]" *Morales*, 709 S.W.3d at 155 (internal quotation marks and citations omitted). Indeed, "[i]n determining whether a public employee's actions are ministerial or discretionary, the greatest benchmarks are the internal policies governing the employee's conduct and any evidence regarding the discretionary considerations the employee typically makes in performing that expected function." *Id.* at 161. But the trial court should not at this first stage analyze whether the defendant complied with the policy or rule because "[c]ompliance with the rule, policy, or regulation simply is not relevant in that [ministerial or discretionary] calculus. Rather, compliance is relevant to negligence and the issue of whether the act was undertaken in good faith." *Meinhart*, 627 S.W.3d at 830.

If the trial court determines an act was ministerial, the court's factfinding role ends because "once a duty has been determined to be ministerial, the question of negligence is one for the jury." *Sheehy*, 706 S.W.3d at 242. Qualified official immunity is not afforded to a government employee who negligently performs a ministerial act, and "[w]hether the [officer's] actions . . . amount to a tort or not depends on whether he negligently failed to perform his mandatory acts, or negligently performed them, which is a question for a jury,

assuming of course there is evidence that he acted unreasonably, that is, negligently." *Id.* at 237 (quoting *Marson v. Thomason*, 438 S.W.3d 292, 301 (Ky. 2014)).

However, if the trial court determines the officer's actions were "performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Sheehy*, 706 S.W.3d at 237 (quoting *Yanero*, 65 S.W.3d at 523). To meet that burden, a plaintiff "must demonstrate the officer knew or reasonably should have known that the action he took within his sphere of official responsibility would violate [Appellees'] rights or that the officer took the action with the malicious intention to cause a deprivation of constitutional rights or other injury[.]" *Meinhart*, 627 S.W.3d at 835 (internal quotation marks, emphasis, and citations omitted). Bad faith may also exist when the public official's acts show "a corrupt motive" or are "objective[ly] unreasonable[.]" *Yanero*, 65 S.W.3d at 523. "[I]n most cases, 'good faith' is just a presumption that exists absent evidence of 'bad faith.'" *Rowan County v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006).

After the parties have presented their arguments and evidence regarding the issue of good faith, the trial court must then make findings of fact to resolve that issue. "In this capacity as a factfinder, the trial court must have the

concomitant authority to judge credibility and give weight to the evidence." *Sheehy*, 706 S.W.3d at 244. *See also Barnette v. Evans*, 697 S.W.3d 749, 756-57 (Ky. App. 2024) ("[T]rial courts must make certain factual findings when deciding a party's entitlement to qualified official immunity, and a modicum of discovery may be necessary before the court can reasonably make the determination.") (citations omitted).

We are acutely aware that this area of the law is difficult and has recently evolved. Furthermore, we realize it may be uncomfortable for a trial court to make factual findings and to answer the question of good faith as it relates to qualified immunity knowing a jury may later be presented the same issue when analyzing the underlying civil claim. However, if necessitated by the facts and duties at issue, that is what the trial court is called upon to do, and the court cannot shy away from its duty.[4] "In this Commonwealth, it is axiomatic that appellate

---

[4] *Barnette*, 697 S.W.3d at 756- 757 ("We agree that the circuit court's order granting summary judgment did not contain any findings identifying the nature or source of the defendants' duties and why it believed these duties were discretionary . . . . The order granting summary judgment must be reversed and the case remanded to the circuit court. If the circuit court deems it necessary, it *may* order additional briefing, or permit discovery, or both. However, whether the trial court finds it necessary to permit additional discovery or not, it must enter a new order with findings in accordance with the standards described in *Meinhart*, *supra*."). *See also Martin v. O'Daniel*, 507 S.W.3d 1, 5 (Ky. 2016) (citations omitted) (stating in a malicious prosecution case: "Malice is a material fact that a plaintiff must prove to sustain a malicious prosecution claim. But, it is also a fact that defeats the defendant's assertion of qualified official immunity . . . . It thus becomes apparent that the very same evidence that establishes the eponymous element of a malicious prosecution action simultaneously negates the defense of official immunity.").

-16-

courts are not fact-finders [.]" *Calhoun v. CSX Transp., Inc.*, 331 S.W.3d 236, 245 (Ky. 2011). Moreover, "[a]s an appellate court, we review judgments; we do not make them." *Klein v. Flanery*, 439 S.W.3d 107, 122 (Ky. 2014). Therefore, we must vacate the circuit court's decision and remand the matter to conduct the mandatory analysis required by *Meinhart*, *Sheehy* and similar relevant cases.

## CONCLUSION

We view any remaining contentions of error in the parties' briefs as moot, unpersuasive, or unpreserved. *See, e.g.*, *Schell v. Young*, 640 S.W.3d 24, 29 n.1 (Ky. App. 2021).

For the foregoing reasons, we VACATE the September 17, 2024, Opinion and Order of the Jefferson Circuit Court which denied summary judgment to Appellants and REMAND for the circuit court to analyze the Appellant officers' entitlement to qualified official immunity anew. We express no opinion on how that issue should be resolved, nor on the proper resolution of any other claims or defenses.

Furthermore, for the reasons stated herein, it is hereby ORDERED that counsel for Appellants, Hon. Carol Schureck Petitt and Hon. Tess M. Fortune, SHALL PAY the sum of $1,000 pursuant to RAP 10(B). The check shall be made payable to the Kentucky State Treasurer and shall be remitted to the Clerk of Court within 30 days from the date of entry of this Opinion and Order. If counsel desires

-17-

a hearing on the issue of sanctions, counsel for Appellants SHALL file a motion for a hearing within 10 days from the date of entry of this Opinion and Order. *In re Marshall*, 734 S.W.2d 472 (Ky. 1987).

ALL CONCUR.

ENTERED: ___10-31-2025___     _____
                                              JUDGE, COURT OF APPEALS

BRIEFS FOR APPELLANTS:

Carol Schureck Petitt
Tess M. Fortune
Pewee Valley, Kentucky

BRIEF FOR APPELLEES
ELIZABETH CHANDLER,
INDIVIDUALLY AND AS
ADMINISTRATRIX OF THE
ESTATE OF ENGRACIA NICOLE
CHANDLER, AND MARQUIS
STONER:

Ethan T. Manning
Chris Meinhart
William F. McMurry
Kevin C. Burke
Jamie K. Neal
Louisville, Kentucky

BRIEF FOR APPELLEES TYESHA
SENTER, AS ADMINISTRATRIX
OF THE ESTATE OF ANNJANETTE
NICOLE SENTER, STEPHAUN
DOTSON, AND KENDRICK RAY:

Terry E. Goodspeed
Sam Aguiar
Jonathan B. Hollan
Louisville, Kentucky